CARRIE D. BAKER, Executrix of Last Will of MILTON C. BAKER, v. KEET-ROUNTREE DRY GOODS COMPANY, Appellant.—2 S. W. (2d) 733.

Court en Banc, February 4, 1928.

972

*Mann & Mann* for appellant.

*W. D. Tatlow* for respondent.

976

WHITE, J.—Suit for money had and received.

Milton C. Baker died August 31, 1923. At the time he was treasurer of the defendant corporation. The defendant later obtained possession of $23,097.97, the proceeds of two insurance policies on Baker's life, in which it was named as beneficiary as its interest might appear, with balance, if any, to Baker's executors.

The defendant claimed the entire proceeds· of the policy. The plaintiff, executrix, also claimed the entire proceeds. By agreement between the plaintiff and the defendant proofs of death were presented to The Mutual Life Insurance Company of New York, insurer in both policies, and the parties executed such receipts as were necessary to enable the defendant to receive the above amount due from the insurance company on both policies, both parties indorsing the draft sent in payment. It was further agreed that if the court should find that the plaintiff was entitled to the money the defendant should pay the same to her with six per cent ·interest from the time it was received. Suit accordingly was filed by the plaintiff for money had and received, and judgment was asked for the amount realized on the policies. The case went to trial June 23, 1924, a jury being

waived, and July 3, 1924, the court rendered judgment for the plaintiff in the sum of $17,724.15, being the amount collected by the defendant, less premiums paid by it on the policies. The defendant in due form appealed from the judgment.

The first policy, numbered 1982864, a twenty-payment policy, was dated May 3, 1912, in the sum of ten thousand dollars. By its terms the insurer

"Promises to pay at the home office of the company in the City of New York to Keet-Rountree Dry Goods Company, its successors or assigns, *as its interest may appear; balance if any to Milton C. Baker,* of Springfield, County of Greene, State of Missouri, *herein called the Insured,* on the third day of May, 1932, if the insured be then living, or upon receipt at said home office of due proof of the prior death of the Insured to the said Keet-Rountree Dry Goods Company, its successors, assigns, *as its interest may appear; balance, if any, to the Insured's executors, administrators or assigns,* the beneficiaries, without right of revocation, ten thousand dollars, less any indebtedness hereon to the company and any unpaid portion of the premium for the then current policy-year, upon surrender of this policy properly receipted."

The policy provides that it shall be incontestable except for the non-payment of premiums, after two years, and that the policy and the application attached "constitute the entire contract between the parties hereto."

The application signed May 3, 1912, by Milton C. Baker, contains among others the following:

"1. My full name is Milton C. Baker. . . .

"5. My present occupation is Treasurer, Keet-Rountree in the following branch of business or trade . . . Wholesale Dry Goods. . . .

"10. The full name of the person to whom the policy is to be payable . . . Keet-Rountree Dry Goods Company, as their Interest may appear. If no Interest appears, then to the insured, or the insured's estate. . . .

"12. The relationship of said beneficiary to me is . . . *Creditor.*

"13. The insurable interest of the said beneficiary in the life proposed for insurance, other than that of family relationship, is . . . *Creditor.*"

The application further states that the applicant already has insurance on his life, naming the sums, amounting to about fourteen thousand dollars.

The second policy, issued by the same company, numbered 2883391, for fifteen thousand dollars, provided that at the death of the insured the above amount should be paid, "to Keet-Rountree Dry Goods

Co., its successors or assigns, as its interest may appear, balance if any, to the insured's executors, administrators or assigns . . . the beneficiary.''

That policy was issued May 12, 1921. Attached to that policy is the application of Milton C. Baker, in which he gives his occupation and relationship to the beneficiary, thus:

''5. (a) My present occupation is: (Full details, business or trade, and name of firm) Treasurer, Keet-Rountree D G. Co.

'' (b) I have been so engaged 40 years. . . .

''7. I do not contemplate any change of occupation, or becoming connected with any military, naval, aeronautic, or aviation organization or service, or going to any foreign or tropical countries, except (if none so state). None. . . .

''9. (a) Name (in full) of the person i. e., beneficiary, to whom the sum insured is to be made payable.

Keet-Rountree D. G. Co.

.'' (b) Residing in Springfield, Missouri.

'' (c) Relationship or insurable interest (in proposed life) of said beneficiary. Business Associate.

'' (e) Have you any person wholly dependent on you for support? (Ans. Yes or No.) Yes.''

This application was signed April 9, 1921. Attached to the policy is a communication from Milton C. Baker, relating to changes, as follows:

''The Mutual Life Insurance Co., of New York.

''Head Offices, Nassau, Cedar, William, Liberty Streets.

''In the Matter of a change in Policy No. 2883391, issued by The Mutual Life Insurance Company of New York, on the life of Milton C. Baker, of Springfield, Missouri; the undersigned hereby request the said Company to issue the above policy in favor of Keet-Rountree Dry Goods Company, its successors or assigns, as its interest may appear, balance if any, to the Insured's executors, administrators or assigns.

''Without right of revocation. . . .

''In Consideration of the granting, by the Company of such request, the undersigned agree to comply with all the requirements of the Company with respect to the subject-matter of said request, subject to all the conditions and stipulations contained in the original application and policy, except as herein modified.

''Dated at Springfield, State of Missouri, this 26th day of May, 1921.

''Witnesses Karl R. Eaton as to Milton C. Baker.''

On Policy Number One the defendant paid premiums annually from May 3, 1912, to May 3, 1922, deducting therefrom the dividends due each year after the first to the policyholder. No dividend was paid thereafter, and May 3, 1923, in accordance with a clause in

the policy, entitled, "Options on Surrender," the policy, deducting loans made by the insurance company, was continued as paid-up insurance in the sum of $8037. After taking out the second policy, June 10, 1921, the Dry Goods Company borrowed from the insurance company on the first policy the sum of $1002.60. We gather that the premium due May 12, 1922, was paid by making a second loan in the same way, deducting, however, a dividend of $178.50, making the sum borrowed at that time $924.10. But on May 12, 1923, the Dry Goods Company paid the premium on the second policy, less the sum of $200.55, the dividend. due for that year, the amount paid being $802.05.

There was due the insurance company for sums borrowed on that policy to pay premiums on the second policy, $1924.70, which was deducted when the settlement was made. Just how the $23,097.97 paid on the death was figured is not clear, but there is no dispute about its correctness. Likewise, it seems admitted that the total net premiums paid by the Dry Goods Company were correctly stated in the judgment as $5,201.60 on the first policy, and $802.05 on the second policy, making a total of $6,003.65.

I. It is not disputed that Keet-Rountree Dry Goods Company had an insurable interest in Baker's life. The dispute arises over the character of the insurance actually written. The company had an insurable interest in his services and could insure against their loss. Such a loss could not be exactly determined. Though there were other ways by which the services of such an officer could be lost to the company, such as resignation or disability, a life policy was written, and if services only were insured the company could collect if death occurred while the insured held his position with the company. The appellant asserts that the contracts of insurance here were of that character.

Respondent claims that the contract of insurance written was one in which the loss to the Dry Goods Company was, in contemplation of the parties, capable of definite ascertainment. The term "Creditor," as beneficiary in the application and in the first policy implies that the loss may be exactly figured. Respondent further contends that the Dry Goods Company had an insurable interest in Baker's character, his integrity and efficiency; it could insure against loss occasioned by his mismanagement or misfeasance. Such loss would be payable at his death, although he should not be at the time still in the employ of the company. Whether this is over the line that marks the limit of insurable interests in the life of another, we are not called upon to consider.

Appellant has pointed out, with citation of authorities, that the want of insurable interest is available only to the insurer. That

means that the beneficiaries cannot question the .validity of the policy on that ground; they are bound by the terms of the contract as written, though that element may be considered in determining .what was in the minds of the parties at the time. The term "creditor" is comprehensive in its scope, but apparently not as comprehensive as its correlative "debtor," which in a broad sense may include any financial liability whether arising in contract or tort. It seems that any pecuniary interest in the continued life of another is insurable. [37 C. J. 391.]

The Dry Goods Company was interested in the continuance of Baker's life, not only because he rendered valuable service to it, but because he had charge of its funds, its collections and disbursements. While living he might make good any shortage occasioned by accident, mistake, or otherwise; which his life policy would insure in case of death. Even a defaulter is more likely to make restitution if alive than if dead.

In the solution of the questions before us, it is well to keep in mind the importance of ascertaining whether the loss insured against was capable of definite ascertainment, and was so intended by the parties to the contract.

II.   The appellant claims that in both policies the insurable interest of the Dry Goods Company in Baker's life was in the value of his services; that in the event of his relationship to the company being  severed by death, the whole sum named in such policy should be paid to the Dry Goods Company, and if that relationship should be severed before death, then the whole should be paid to Baker's estate. In other words, that in each policy the amount of loss insured against could not be figured and the Dry Goods Company should receive all the proceeds of the policy or none.

In the application for the first policy, May 3, 1912, the beneficiary is thus mentioned:

"The policy is to be payable to Keet-Rountree Dry Goods Company as their interest may appear; *if no interest appears* then to the insured or the insured's estate.   . . . .

"The relationship of said beneficiary to me is Creditor."

That first statement is susceptible of the construction contended for by appellant; the money would go to. Baker's estate only if *no interest* appears in the Dry Goods Company. It is all or nothing. Yet, that interpretation is not consistent with the word "Creditor" appearing twice as the relationship of the beneficiary. The fatal objection to it is that it was not carried forward into the policy which, as written, promises to pay on the death of the insured the sum mentioned: "To Keet-Rountree Company, its successors or assigns as its interest may

appear; balance, if any, to Milton C. Baker of Springfield, Greene County, Missouri, herein called the insured, on the third day of May, 1932, if the insured be then living;'' or if he die prior to that time, then payable ''to the Keet-Rountree Dry Goods Company, its successors or assigns, as its interest may appear, balance if any to insured's executors, administrators or assigns, the beneficiaries.''

The additional abstract of the record shows that the applications and the policies were on printed forms furnished by the insurance company. The significant parts of those stipulations must have been written in to express the intention of the parties, because they differ in the different papers.

The policy and the application contain the entire contract, but if the policy contains provisions in conflict with those in the application, being the later instrument, it should prevail. The terms of the offer are varied in the acceptance. Certainly an ambiguous statement in the application may be cleared up in the terms of the policy. That is what we have here. The expression in the application quoted is not clear, but the policy unmistakably contemplates that whatever interest may appear in the Dry Goods Company is capable of exact computation. It is the amount which may be due from Baker to the Dry Goods Company, otherwise the expressions ''creditor'' and ''balance if any'' are erased by construction, although they were intentionally written in the forms.

The defendant introduced evidence to show that at the time Policy Number One was taken out Baker did not owe the Dry Goods Company, and therefore, it was not a creditor. That is an attack upon the validity of the contract to which, as written, the company gave its assent. It is not in position to say that the language used, if given its ordinary significance, invalidates the policy.

There are authorities to the effect that in order to make the interest of creditor an insurable interest, the insured must owe the beneficiary at the time. Baker was often indebted to the company. He was treasurer, and most of the time had money to his credit with the company, but sometimes he overdrew. At the end of almost every year he was overdrawn several hundred dollars, and sometimes more than a thousand dollars. These overdrafts were made good the first of the following year. If he had died leaving the overdraft before it was made good, no doubt it would have been covered by the insurance policy.

But the word ''debtor'' is a comprehensive term, and includes liabilities other than those which arise from contract though the word ''creditor,'' its antonym, is possibly somewhat less comprehensive. Baker had charge of the money of the concern at all times; he collected accounts and paid accounts and attending to the financ-

ing of the concern; the money of the company was always in his charge as treasurer. It is not unusual for an officer of that kind to give bond for the faithful accounting of the sums which come into his hands, and the company certainly would have an insurable interest in the life of the treasurer in charge of such sums of money, because it had a pecuniary interest in the continuance of his life in that particular capacity, as accountable for his funds. He would be its debtor for any sums not regularly accounted for. The reasonable interpretation of Policy Number One is that given it by the trial court.

III. The application for the second policy was dated April 9, 1921. The name of the beneficiary was written "Keet-Rountree D. G. Co.," and the relationship mentioned was "Business Associate." No other beneficiary was named.

While it is not stated, it is apparent that that policy, when it reached Baker, was not satisfactory, because it named only Keet-Rountree Dry Goods Company as beneficiary. It must have been returned to the company at the time, for a letter written by Baker to the insurance company, dated May 26th, was attached to the policy, and introduced in evidence. This letter requests the insurance company to issue the policy, "in favor of Keet-Rountree Dry Goods Company, its successors or assigns, as its interest may appear, *balance if any*, to insured's executors, administrators or assigns. . . . In consideration of the granting, by the company of such request, the undersigned agree to comply with all the requirements of the company with respect to the subject-matter of said request, subject to all the conditions and stipulations contained in the original application and policy, *except as herein modified*."

This letter respondent calls an amended application. It will be noted that the application for the first policy contains the statement that the loss is "payable to Keet-Rountree Dry Goods Company as its interest may appear. *If no interest appear*, then to the insured or the insured's estate." That phrasing is not in the original, nor in the amended application for the second policy.

The application for the first policy does not contain the expression, "balance if any," though it is written in the policy. *It appears in the amended application for the second policy and in the policy.* In that amended application Baker agrees to abide by all the terms and conditions in the original application and policy "*except as herein modified*." Whatever modification appears in this letter would prevail over any terms in the original application or the policy. The omission of the expression, "if no interest appear, then to the insured's executors," thus differing from the application for the first

policy, show an intention to make clear that whatever interest of the Dry Goods Company might appear would be capable of exact computation.

There is no attempted explanation of that expression, "balance if any." In interpreting an insurance policy, as in any other contract, effect must be given to every phrase and word in it, if possible. It suggests that in the minds of Mr. Baker, the Dry Goods Company and the Insurance Company the insurance was against loss which could definitely be figured and liquidated. If the appellant is correct, there would be *no* balance in any event; the Dry Goods Company would be entitled to it all or none, dependent upon whether Baker held his job at death. In the second policy as written, upon which the minds of the parties met, it was evidently understood that there might be a balance, which could occur only if the amount of the company's loss could be figured definitely.

Appellant makes a very ingenious and elaborate argument upon the meaning of the words "Business Associate;" that Baker's relationship to the company had respect only to his service, and that the policy therefore insured only that, and not his fidelity and efficiency. "Business Associate" is a general term. It is explained by his exact status; the particular relation which he sustained to the company appears in the application and the evidence; he was treasurer, in charge of the company's accounts, and might incur a liability at any time. If there was any doubt in the first policy as to whether a debtor could be insured before he owed any debt, there is no doubt that the treasurer didn't have to be a debtor in the strict sense. He could be insured as a treasurer against any kind of loss his actions might occasion. "Business Associate" is susceptible of such an interpretation as appellant claims; his employer insured his services. It is also susceptible (considering the surroundings upon which appellant insists, which means his duties, etc.,) of the interpretation that his integrity and efficiency were insured by the Dry Goods Company against loss on account of failure in those respects. That interpretation is consistent with the modified application, and with the terms of the policy, including the expression "balance if any." Whereas, the mere insurance of his services and nothing else is inconsistent with that language. All the terms of the policy must be reconciled, if possible, and "business associate" can be reconciled with the expression "balance if any," only on the theory that the Dry Goods Company was insured against *definite* loss through the possible mismanagement or misfeasance of Baker. It does not answer this to say that Baker was incapable of mismanagement or infidelity to the company. Insurance policies are standardized to meet general conditions, and insurance companies know that failures in companies of this kind often occur through the defalcation of officers who have the best of reputations. A standard life policy was written.

984

IV. The defendant offered evidence for the purpose of supporting its theory of the contracts. Mr. J. H. Rountree, the president of the company, was sworn, and explained the relation of himself and Mr. Baker to the company. Baker had been associated with the company for forty years and had been advanced from one position to another until at the time the policy was taken out he was treasurer.

Baker's function was this: "He took the part of looking after the offices, the collection of accounts, payment of accounts, insurance of all kinds, and the financing and borrowing of money if it was necessary." The president's function was this: "I looked after the operating part, buying and selling merchandise. The merchandise was taken care of by me and assistants were under my supervision."

The defendant then offered to prove by Mr. Rountree that, prior to May 3, 1912, when the first policy was applied for, after I. N. Smith, agent of the insurance company, solicited Mr. Baker to take out insurance to indemnify the company against the loss of his services and Mr. Rountree's services, Baker and Rountree, after talking it over, agreed to take out such insurance, and that Baker accordingly took out Policy Number One, and Rountree took out a like policy. This was offered in explanation of Policy Number One. Aside from the indefiniteness of the offer, so far as it affects the exact terms of the contract, the admissibility of that evidence was challenged and was excluded by the court.

If this conversation between Baker and Rountree can be considered as an offer by them when no representative of the company was present, it was entirely voluntary, unilateral and not binding on anybody.

On the other hand, if the Dry Goods Company was represented at the conference, then, so far as Baker's insurance was concerned, Rountree represented the company. He was therefore an incompetent witness as the chief officer of the defendant who negotiated the very contract in issue.

Further, if that conversation can be construed as an agreement between two principal officers of the company, the performance of one to be a consideration for the performance of the other, then, Baker being dead, Rountree was not a competent witness to testify to the terms of the contract which he negotiated for his own benefit.

Further, the most that can be said about this evidence is that it was a negotiation leading to a contract afterwards entered into.

In this connection the plaintiff offered in evidence a letter addressed to Rountree and Baker, managers of Keet-Rountree Dry Goods Company, from I. N. Smith, district manager of the Mutual Life Insurance Company, dated April 30, 1912—three days before Baker

signed his application to the first policy—in which letter he called their attention to the fact that men in business were becoming favorable to some form of business insurance, from the fact that business managers who made good were worth far more as a business asset than the mere recompense of their salary; and he said:

"Therefore the rule with a vast portion of the business institutions to insure the brains of their business by thus permitting or requiring a reasonable amount of life insurance (premiums paid by the firm the same as fire insurance) to indemnify in case of death against loss (as their interests may appear) from any *cause involving the management,* becomes more manifest as time goes on.

"Space will not permit of an effort *to recount the many ways in which loss may occur, nor who may be the greatest sufferer,* since we must admit, in this connection, that the *employee or his posterity are creatures of the same contingencies* as the employer."

Those parts italicized indicate that the understanding of Smith, who was dead at the time of the trial, was exactly the same as that of respondent here. If he had not a very clear idea of what kind of insurance he purposed to write, one thing is clear: he was an agent soliciting business, and he wanted to write insurance in any form which suited the insured, and which his company would accept. His letter was at least as clear as the conversation between Baker and Rountree, offered by defendant. Whether Mr. Smith was such an agent as would make his statement binding upon the company, indicating the insurance company's understanding of the contract, it is not necessary to consider, but he had authority to negotiate this insurance and the conversation between Rountree and Baker immediately followed the letter. The natural inference is that these officers, acting upon his suggestion, intended to take out the insurance suggested in his letter. The letter and the conversation go together, subject to the same rule.

The rule that all previous negotiations are merged into the contract as finally written applies particularly to insurance contracts. [22 C. J. p. 1112; Insurance Co. v. Owen Bldg. Co., 195 Mo. App. l. c. 373.] This rule is reenforced in this case by the terms of the contract itself, for the policy states: "This policy and the application herefor, copy of which is indorsed hereon or attached hereto, constitute the entire contract between the parties hereto."

Insurance contracts usually have such a clause, because probably liable to attack by something said or done in preliminary negotiations. That applies to all the parties to the contract. That rule clearly excludes any prior conversations between Baker and Rountree, as well as the letter of Smith soliciting the insurance. The authorities cited by appellant (such as Heusner v. Mutual Life Ins. Co., 47 Mo. App. 336; Mutual Life Insurance Co. v. Richards, 99 Mo. App. 88,

and others), where the court had under consideration collateral agreements in relation to the proceeds of the policies, are not in point.

We conclude that both the letter and the conversation which it induced were inadmissible.

V. Defendant offered in evidence what may be termed admissions of Baker, in a report of the company's condition made to a New York firm after these policies were written, for the purpose of obtaining credit. At that time the two policies were in force and Mr. J. H. Rountree, president of the company, had two policies of like amounts. In that report Baker in his own handwriting inserted this: ''Life insurance in favor of the company, $50,000.'' That was not placed with the assets. It was offered to show that Baker regarded his insurance policies as in favor of the company, which undoubtedly they were. How does that sustain the defendant's theory that the insurable interest was of the character claimed? Houses like that to which the report was sent know that the officers and managers of companies like the Keet-Rountree Dry Goods Company, often plunge their companies into insolvency through mismanagement and embezzlement. They did not distinguish Baker from any other officer. It would help the standing of the company for its creditors to know that its officers had placed insurance to protect the company against possible loss through them, and creditors knew that life insurance policies can easily be pledged as such security.

Mr. J. W. Hunt, secretary of the Dry Goods Company, testified that just before the second policy was taken out he and Mr. Baker discussed the feasibility of ''taking the additional insurance to indemnify the company.'' He said further that Baker explained to him that he had a ten-thousand-dollar policy and that by borrowing on it the company could obtain additional insurance at that time; the amount under discussion was fifteen thousand dollars. Witness was asked to do some figuring to show how long the cash value already accrued on the original policy would carry. He said of Baker:

''He referred to the policy as the property of the company, and the company would be paying the premium on the two policies, and it was from the standpoint of the company's interest that he was interested in figuring out whether there would be a saving.''

Baker further said that the object of the insurance in both cases was the same. The witness also mentioned a conversation in his presence which Baker had with Mr. Charles Rountree, who was a stockholder in the company, but not an officer, in which Baker said to Charley:

''You wouldn't object to the company getting some money on you if you were dead would you, the same as they would on Joe and me?

"Your services are worth enough to the company that we ought to be willing to pay some premiums against any loss in the case of your death."

Appellant's brief emphasizes that statement. It is indefinite and does not mention any of the terms or conditions of the first policy or suggest any phrasing or principle upon which one can lay a finger to show an agreement which would supplement the terms of the policy. It does not purport to be evidence of any agreement between Baker and the company, or any representative of the company, or any conversation between Baker and J. H. Rountree. It is not evidence of any contract or a change of any terms of the previous contract. If it could be so construed it would be inadmissible for the purpose of varying the terms of the first contract.

So far as it relates to the second contract it shows only a purpose of Baker, or something in the mind of Baker, in relation to the kind of insurance he would take out. There is a statement that the two policies were to be the same. That would not affect the terms of either policy if they are in fact different. It would not support the defendant's theory because it does not purport to explain what the purpose of the policies were to say that the two were the same.

Charles Rountree was sworn for the defendant and related the same statement sworn to by Hunt. The conversation with Baker was *before* taking out insurance and Baker explained it that in

 case he and the president should die the company would receive the amount of the policies and the reason why they would receive the amount of the policies was because it was for the loss of the services of himself and J. H. Rountree. He stated to Charley the amount of the policies held by himself and J. H. Rountree. This was offered probably as an admission of Baker as to the character of the insurance he expected to take out. The testimony leaves it uncertain as to whether Baker talked to the witness further after the insurance was written or not. If Baker had made such statements after the policies were received, it was the understanding of the witness of Baker's understanding of the purport of the contracts. It does not purport to be Baker's admission as to any *fact* or any verbal agreement that he had with the president of the company, but only a statement of what Baker understood the contracts, the two insurance policies, contained or would contain. If Baker had been alive and on the stand it would not have been permissible for him to state his understanding of the meaning of the written contracts. [22 C. J. 515.] Certainly his hearsay statement would not be competent evidence to show what the contract was. Admission as to mere matters of opinion are not competent as evidence of a fact. [22 C. J. 299.]

The plaintiff also offered to show by this witness that one of J. H. Rountree's policies was surrendered on a cash payment of $3,015.18, and that Baker, as treasurer of the company, ordered the same to be credited to the company as the proceeds of the policy. This is offered as an admission by Baker that the policies were an insurance only of services. The evidence was not admissible for that purpose, for one reason because the policy of Rountree was not put in evidence, nor is there any evidence of its terms and conditions.

VI. None of the parol evidence was offered to explain any alleged ambiguous word or phrase in either policy or either application. If the term "business associate" is ambiguous, it is explained in the application and in the testimony of J. H. Rountree, who stated Baker's position; he was treasurer of the Dry Goods Company. One thing seems certain, that Baker intended to have no uncertainty about the terms of the second policy. The equivocal phrase in the application for the first policy—"*if no interest appears*"—was replaced in the amended application for the second policy by "*balance if any.*" The limited relation of the beneficiary expressed in the word "*creditor*" was replaced by "*Business Associate*" which was shown to mean "treasurer," with all the duties and responsibilities pertaining to that office. If any doubt existed as to how far in the character of creditor the company would be protected, there was no doubt that as "treasurer" it could insure Baker's life against *any* losses occurring through his management. Instead of or after the words "as its interest may appear," it would have been easy to insert some such phrase as "if still in the employ of the company," or, "if the relation of business associate continues," to express that no interest appears if insured has severed his relations with the company. It may be said that only stock phrases were used, but Baker was not inept in the use of language. He was capable of expressing what he meant when he said "balance if any," replacing "if no interest appear."

Appellant's argument would read into each policy language not in the writing, and read out of it the fatal phrase "balance if any." According to appellant the loss would be payable to the insured's estate on the remote contingency that he would have severed his relation to the company at the time of his death. In his application for the second policy Baker said: "I do not contemplate any change of occupation." That probably was in the printed form, but all the evidence regarding Baker tends to show the same. It was not in his mind that he would ever sever his relationship with the Dry Goods Company as long as he lived. He expected to die in the harness. And he did not have an expectation that his estate should receive any

proceeds of the policy *only* on a contingency which he never expected to happen. On the contrary, his conduct and his modification of the application and the policy show that he expected his estate certainly to benefit by the policy.

Appellant lays stress upon Mr. Baker's character, as a factor in interpreting the contents. Insurance policies are like official bonds —not written with a view to be affected by an impeccable character, such as Mr. Baker's. Doubtless, as appellant contends, Mr. Baker's integrity was so unquestionable and his efficiency so perfect, that the company was not likely to suffer any loss except that of his services. But insurance policies and applications for insurance policies, come in forms that apply generally. The Dry Goods Company would suffer just as much by the loss of his services by resignation or permanent disability as they would by death, but the company had not prepared a form of policy to meet such contingency. This new kind of insurance which Mr. Smith, the agent, was thrusting upon the attention of these officials hadn't assumed the importance which required a special form for it, so the insurance actually written was a life policy in the usual form, and nothing was written in to indicate an intention which would support appellant's theory of the contract. There is no room for interpretation of either policy in any other way than as it reads.

The trial court allowed to the defendant a credit for all the premiums paid by it, and interest from the time of the death until the time of the trial. The defendant claims that in any event interest should be allowed on the premiums paid from the time they were paid. The statute, Section 6491, Revised Statutes 1919, provides that interest may be allowed at the rate of six per cent "on accounts after they become due and demand of payment is made." This must be classed as an account. No entry appears on the books of the company charging Baker with those payments at the time they were made. No demand appears anywhere for those sums at any time, so we can therefore find no law for the allowance of interest. It is conceded that the insurance was for the benefit of the defendant, and on respondent's theory it had that protection during the continuance of Baker's life, against any loss which it might sustain through him. Sometimes insurance of that kind is taken out in lieu of an increase of salary.

We think the trial court correctly solved all the questions presented, and accordingly the judgment is affirmed. All concur, except *Walker, C. J.,* and *Blair, J.,* who dissent.

## On Motion for Rehearing.

WHITE, J.—The motion of appellant for rehearing elaborately reargues the case and presents one point upon which perhaps the opin-

ion was not sufficiently clear. It is complained that we misconceived appellant's position when we held that it took no account of the expression "balance if any," in each policy, and on its theory it took all the proceeds of the policy or none.

It has been strenuously contended from the start that defendant's insurable interest in Baker's life was in the value of his services and nothing else; that if his connection with the Dry Goods Company should be severed "for any other cause than death . . . then the insurable interest would cease."

If that means anything it means that while two beneficiaries are named, only *one*.could have an insurable interest at the death; which one would depend upon Baker's continued connection with the company. The conclusion is inevitable that either the company or Baker's estate would take all the proceeds of the policy *as beneficiary*, or none, and that the interest of the company would not be capable of computation, but would be liquidated in the sum named in the policy. It is now argued that in adjustment of the loss there is always computation and a "balance" struck.

The terms of the contract contemplate only a balance upon an adjustment *between beneficiaries*. It does not mean a balance after considering loans, advances, pledges and the like. They would be determined by the agreements and circumstances attending such collateral incidents, *occurring after the contracts were written*.

"To Keet-Rountree Dry Goods Company, its successors and assigns as its interest may appear; balance if any to the insured's executors, administrator or assigns, *beneficiaries*."

Balance of what? The face of the policy; the amount due the beneficiaries. Balance after *what* is deducted? No balance is provided for except to insured's estate, *after* the insurable interest of the Dry Goods Company is settled. "As its interest may appear," it gets the money to settle that interest, and then the "balance if any" goes to the insured's executors. The interest which must *appear* in order to leave a balance over, is the company's interest as beneficiary. That is the *contract*.

On appellant's theory, if it has an insurable interest it gets it all. There could be no balance of the fund to pay to the other beneficiary as such.

It is now said that a balance was struck when the judgment was rendered in this case. So it was, and that balance to insured's estate was found after defendant's interest appeared *as creditor* and was settled. But that judgment was contrary to appellant's theory; it repudiates the notion that it could have any interest as creditor. It demands the whole sum as beneficiary with an interest measured not by computation, but by the sum named in the policy.

It is said further that the Dry Goods Company had a right to collect the money on the policy, even if its insurable interest had terminated, and retain what might be due it for premiums advanced. Why? Because it had a lien for such advancements. Not because it was named as beneficiary. It could do that and could collect what Baker owed it on that account, even if it had not been named in the policy at all. That fact that it is named as beneficiary gives it no more advantage in that way than any other stranger to the contract would have with a similar lien. The advanced premiums would be due to the company as soon as Baker resigned, or whenever demanded. That claim did not accrue on account of Baker's death, but because the company advanced the money.

The balance adjudged to be paid to Mrs. Baker was after the advancements were deducted in favor of Keet-Rountree Dry Goods Company, as creditor. It was a creditor to that extent. If it was a creditor protected as such, because named in the policy as beneficiary, then we have the application of plaintiff's theory, which the trial court adopted. But defendant vigorously denies that it was protected in the policy as creditor. It cannot claim that Baker's estate ever owed it that money *because* it was named as beneficiary without abandoning its position maintained throughout. We must construe the contract as it reads and appellant's theory cannot be made to fit it.

The motion for rehearing is overruled. *Graves, Gantt, Atwood* and *Ragland, JJ.,* concur; *Walker, C. J.,* and *Blair, J.,* dissent.