Norma J. PETERS, et al., Respondents,

v.

**EMPLOYERS MUTUAL CASUALTY CO., Appellant.**

No. 75331.

Supreme Court of Missouri,
En Banc.

April 20, 1993.
Rehearing Denied May 25, 1993.

Theresa Shean Hall and Glenn E. McCann, Kansas City, for appellant.

R. Dan Boulware and Carol C. Barnett, St. Joseph, for respondents.

BENTON, Judge.

On February 18, 1989, fire destroyed the Mule Barn Theatre at Tarkio College, consuming personal property owned by the two plaintiff faculty members. Tarkio College had insured the Mule Barn Theatre and its "contents" with defendant, Employers Mutual Casualty Company.

Does defendant's policy cover the plaintiffs' property up to the limit of $3,625,200? Yes, answered the circuit court, finding coverage. After appeal to the Court of Appeals, Western District, this Court granted transfer. Affirmed.

## I.

Defendant argues that the plaintiffs lack standing to seek a declaratory judgment because they are not parties to the insurance policy, nor third-party beneficiaries. True, the policy does not refer by name to plaintiffs. Tarkio College is the "named insured" and defendant clearly the insurer.

■ Third-party beneficiaries, however, may sue for declaratory judgment if they could enforce the contract. *Gurniak v. Liszewski*, 411 S.W.2d 84, 86 (Mo.1967). Invoking the presumption that parties contract for themselves and not for the benefit of others, defendant argues that plaintiffs are "incidental beneficiaries" who cannot enforce the contract. *State ex rel. Ranni Associates, Inc. v. Hartenbach*, 742 S.W.2d 134, 140 (Mo. banc 1987).

■ A third-party beneficiary can sue to enforce the contract *if* the contract terms "clearly express" an intent to benefit either that party or an identifiable class of which the party is a member. *Id.* at 140–141. In this case, the insurance policy twice mentions the "personal property of others" in the care, custody or control of the named insured. The policy also twice says that the defendant's "payment for loss of or damage to personal property of others will only be for the account of the owner of the property."

Thus, the insurance policy clearly expresses an intent to benefit those whose personal property is in the care, custody or control of the insured college, and to pay the owner directly. Defendant, of course, contends that the College did not intend to cover the personal property of others. The policy terms, however, give plaintiffs sufficient standing to bring a declaratory judgment action to determine the extent of coverage.

## II.

■ Defendant claims that the trial court erred in refusing to admit evidence of intent, while finding coverage based on the plain language of the policy.

At trial, defendant repeatedly offered evidence of intent. Defendant's vice-president—its highest ranking witness—candidly stated defendant's theory of coverage: "They did not request it, they did not pay any premium for it. I think it was not the intent of Tarkio [College] to provide coverage for it at the time the policy was written." In support of non-coverage, defendant offered the insurance proposal drafted by the college and its broker, the "statement of values" of covered property, and the previous insurance policy from a different company. Defendant also offered two of its insurance agents and three of its underwriters to testify that the College did not intend coverage for the personal property of others.

The trial judge properly refused evidence of intent. Because the College drafted the insurance proposal, took bids, and switched insurance companies, this insurance contract was negotiated and not an adhesion contract. Defendant's heavy reliance on *Estrin Construction Co., Inc. v. Aetna Casualty & Surety Co.*, 612 S.W.2d 413 (Mo.App.1981) and *Spychalski v. MFA Life Insurance Co.*, 620 S.W.2d 388 (Mo.App. 1981) is misplaced, because these cases apply only to adhesion contracts and not to negotiated contracts. *Rodriguez v. General Accident Ins. Co.*, 808 S.W.2d 379, 382 (Mo. banc 1991); *Robin v. Blue Cross Hospital Service, Inc.*, 637 S.W.2d 695, 698 (Mo. banc 1982).

■ This Court has long held that the general rules for interpretation of other contracts apply to insurance contracts as

well. *Haseltine v. Farmers' Mut. Fire Ins. Co.*, 263 S.W. 810, 813 (Mo.1924); *Baker v. Keet–Rountree Dry Goods Co.*, 318 Mo. 969, 2 S.W.2d 733, 740 (1928). The key is whether the contract language is ambiguous or unambiguous. Where insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage. *Rodriguez,* 808 S.W.2d at 382; *Robin,* 637 S.W.2d at 698. If the language is ambiguous, it will be construed against the insurer. *Id.* An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract. *Rodriguez,* 808 S.W.2d at 382.

The trial court found coverage of plaintiffs' personal property to the limit of $3,625,200, with a $5,000 deductible. This is the plain meaning of the policy. Within the policy the "BUILDING AND PERSONAL PROPERTY COVERAGE FORM" provides:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1. COVERED PROPERTY

Covered Property as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

> a. BUILDING, meaning the building or structure described in the Declarations, including:
>
> . . . .
>
> b. YOUR BUSINESS PERSONAL PROPERTY located in or on the building described in the Declarations. . . .
>
> . . . .
>
> c. PERSONAL PROPERTY OF OTHERS that is:
>
> (1) In your care, custody or control; and
>
> ■ (2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.
>
> However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

("We" refers to the defendant Company and "you" refers to Tarkio College.)

Plaintiffs contend that Covered Property includes "personal property of others," coverage "c". Defendant claims that Covered Property excludes coverage "c," but includes coverages "a" and "b," for "Building" and "Your Business Personal Property."

As the just-quoted Form says, "Covered Property" is determined by whether "a Limit of Insurance is shown in the Declarations." Declarations are on the first page of the insurance policy, "COMMERCIAL PROPERTY DECLARATIONS":

| COVERAGES PROVIDED | PREMIUM |
| --- | --- |
| BUSINESS INCOME | $ 9,065.00 |
| BLANKET BUILDING AT LOC 1–21 & 23–28 | $65,589.00 |
| BLANKET—CONTENTS LOCS 1–3, 5–27 | $ 6,961.00 |
| BLANKET—EXTRA EXPENSE | $ 553.00 |
| TOTAL PROPERTY PREMIUM | $82,173.00 |

The "Limit of Insurance" is on the third page of the insurance policy, "COMMERCIAL PROPERTY SCHEDULE":

| BKT | COVERAGE | LIMIT OF INSURANCE & DEDUCTIBLE | COVERED CAUSES OF LOSS | SPEC INT | COINS | OPTIONAL COVERAGES |
|---|---|---|---|---|---|---|
| 01 | BLANKET BUILDING AT LOC 1–21 & 23–28 | $19,122,201 DED $5,000 | SPECIAL | 01 | 100% | AGREED VALUE REPLACEMENT COST |
| 02 | BLANKET—CONTENTS LOCS 1–3, 5–27 | $ 3,625,200 DED $5,000 | SPECIAL | | 100% | ACTUAL CASH VALUE AGREED VALUE |
| 03 | BLANKET—EXTRA EXPENSE 40%–80%–100% | $ 200,000 | SPECIAL | | | |

The parties agree on most points: that the Mule Barn Theatre was location 2, "LOC 2"; that the term "BLANKET" means "all-inclusive"; that coverage "a" "Building" includes the Theatre; and that the Theatre and its "contents" are covered.

The issue is whether the declaration "BLANKET—CONTENTS LOCS 1–3, 5–27" includes coverage "c" Personal Property of Others. Defendant claims that "CONTENTS" includes only the "b" coverage, "your business personal property," excluding plaintiffs' personal property because "your" means the College's.[1] Plaintiffs contend that "CONTENTS" include both "b" and "c" coverage.

Neither side says that "CONTENTS" is ambiguous. The term "CONTENTS" is not defined anywhere in the insurance policy. Defendant's witnesses claimed that "CONTENTS" has a specific technical meaning within the insurance industry. Plaintiffs' expert claimed that "CONTENTS" includes the personal property of others.

■ In this circumstance, Missouri law is clear. If there is a conflict between a technical definition within a contract, and the meaning that would be reasonably understood by the average lay person, a lay person's definition will be applied unless it

plainly appears that the technical meaning is intended. *Rodriguez*, 808 S.W.2d at 382; *Robin*, 637 S.W.2d at 698; *Greer v. Zurich Insurance Co.*, 441 S.W.2d 15, 27 (Mo. 1969).

The trial court correctly concluded that the word "CONTENTS" was not ambiguous. Dictionaries define "contents" as "something that is contained" or "the thing, things, or substance in a receptacle or an enclosed space" such as "the contents of the room."[2] In this case, "contents" means the things contained within the Mule Barn Theatre. Contrary to defendant's view, the word "contents" does not denote ownership. The owner of a building does not necessarily own the personal property within it.

The plain and ordinary meaning of the phrase "BLANKET—CONTENTS LOCS 1–3, 5–27" is coverage of all things contained within locations 1–3 and 5–27, including personal property at location 2, the Mule Barn Theatre.

The third page of the insurance policy "COMMERCIAL PROPERTY SCHEDULE" limits this coverage to $3,625,200, with a $5,000 deductible. This coverage is potentially available for "personal property of others" destroyed at the Mule Barn Theatre.[3]

---

**1.** Defendant and Plaintiffs agree that a specific part of the "b" coverage for "your business personal property" includes a token "automatic extension" covering the personal property of others. This automatic extension has a limit of only $2,500 per premises and thus is minimal compared to plaintiffs' claimed loss.

**2.** *Webster's Third New International Dictionary* 492 (1976); *Barnhart Dictionary of Etymology*

213 (1988); *American Heritage Dictionary* 316 (2d coll. ed. 1991); *American College Dictionary* 261 (1966).

**3.** In their stipulation, the parties "reserved" the value of plaintiffs' loss and the issue of the College's "care, custody and control."

**304**

The judgment of the circuit court is affirmed.

All concur.