**Earl W. CAUSEY, Plaintiff/Appellant,**

v.

**MEDICAL LIFE INSURANCE COMPANY, et al., Defendant/Respondent.**

No. ED 76605.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 16, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 5, 2000.

Stephen G. Bell, St. Louis, for appellant.

John P. Kemppainen, Jr., St. Louis, for respondent.

CLIFFORD H. AHRENS, Judge.

Plaintiff, Earl W. Causey, appeals from summary judgment entered in favor of defendant, Medical Life Insurance Co., in plaintiff's suit to recover life insurance proceeds as well as statutory penalties and attorneys' fees for vexatious refusal to pay the claim. We affirm in part and reverse and remand in part.

## I. Facts

Plaintiff's wife, Stella Ann Causey ("Mrs.Causey"), was employed as a teacher by the Fort Zumwalt School District ("District") during the 1994–1995 school year. As an active employee, Mrs. Causey qualified for $50,000 of life insurance provided by District under a group policy offered by defendant. Mrs. Causey also exercised an option under the policy to purchase an additional $100,000 of supplemental life insurance, the premiums for which were deducted from Mrs. Causey's paycheck. Plaintiff was designated as the beneficiary under Mrs. Causey's policy.

Mrs. Causey was diagnosed with cancer and no longer actively at work as of October 14, 1993, but continued to pay premiums through October 1, 1994.[1] She died on January 22, 1995. Plaintiff thereafter filed a claim with defendant for the life insurance benefits afforded by Mrs. Causey's policy, which defendant denied on the ground that the policy had terminated prior to her death. Plaintiff subsequently sued defendant for breach of contract (Count I), seeking life insurance benefits of $150,000, and for vexatious refusal to pay an insurance claim (Count II), seeking penalties and attorneys' fees as provided by § 375.420 RSMo (1994). The trial court granted defendant's motion for summary judgment; this appeal follows.[2]

## II. Standard of Review

Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule

---

1. Both parties agree that Mrs. Causey's cancer rendered her "totally disabled" as that term is defined in the policy.

2. Neither defendant's motion for summary judgment nor the trial court's judgment explicitly addresses Count II (vexatious refusal to pay). Nevertheless, the judgment is final because "[t]he finding of the trial court on Count I necessarily precludes any recovery on Count II. 'Where the disposition of one count and the entry of a general judgment thereon operates to settle all questions, eliminate all issues as between the parties and preclude recovery on all other counts, there is a final judgment for purposes of appeal.'" *Clayton Brokerage Co. of St. Louis, Inc. v. Raleigh*, 679 S.W.2d 376, 378 (Mo.App.1984) (citation omitted). Plaintiff did not raise any claims of error in his appellant's brief as to the judgment on Count II, however, and therefore has failed to preserve any such claims for appellate review. We decline plain error review under Rule 84.13(c).

74.04(c)(3). In the case at bar, the parties are in agreement as to the material facts. Their dispute, and thus the issue on appeal, concerns the proper construction of Mrs. Causey's life insurance policy. "Where the underlying facts are not in question, disputes arising from the interpretation and application of insurance contracts are matters of law for the court." *Southeast Bakery Feeds, Inc. v. Ranger Ins. Co.*, 974 S.W.2d 635, 638 (Mo.App. 1998).

### III. Relevant Policy Provisions

The following sections of the policy are relevant to our analysis.

### A.

### Effective Date Provisions

---

* * *

## TERMINATION OF COVERAGE

Insurance coverage will end on the earliest of:

1. the date the Insured is no longer actively at work;

* * *

If the Insured is no longer actively at work as a result of a disability, lay-off, or leave of absence, insurance coverage may be continued as set forth below:

Disability Until the end of the twelfth insurance month following the month in which the disability began, provided all premiums are paid when due.

* * *

### B.

### Group Term Life Insurance Benefit

---

## BENEFIT

We will pay the Insured's beneficiary the amount of life insurance in force as of the date of his death provided:

1. he is insured under this policy on the date of his death; and

2. we receive proof of death within two (2) years after the date of death.

We will determine the amount of insurance based upon the Schedule of Benefits.

* * *

## CONVERSION PRIVILEGE

An Insured may also convert to an individual policy of life insurance if his life insurance ceases because:

* * *

1. life insurance benefits under this policy cease;

* * *

We must receive written application and the first premium for the individual life insurance policy within 31 days after insurance under the group policy ceases.

* * *

### C.

### Waiver of Premium [3]

---

■ We will continue an Insured's life insurance benefit under this policy without the further payment of life insurance premium if he becomes totally disabled, provided:

1. he is insured under this policy; and

2. he is under the age of 60; and

3. he provides us with satisfactory written proof of total disability within 12 months after the date he became disabled; and

4. his disability has continued without interruption for a period of 180 consecutive days; and

---

3. For ease of reference, we have numbered the main paragraphs in this section, which appear in brackets; the policy contains no such enumeration.

5. he is still disabled when he submits the proof of disability.

■ Totally disabled means the Insured Person is prevented because of that disability from performing the main and important duties of any occupation for which he is reasonably suited by means of education, training or experience.

■ The initial period for which premium will be waived will retroactively commence with the date of the onset of the disability and will continue while the Insured remains totally disabled for up to twelve (12) months from the date we receive the required proof. Premium will continue to be waived for subsequent 12–month periods provided the Insured:

1. remains totally disabled; and

2. provides satisfactory written proof of continuing total disability during the last 3 months of each 12–month period.

The Insured is responsible for obtaining initial and continuing proof of disability.

■ The Insured will be covered for the amount of life insurance in force as of the date of disability. The amount of life insurance in force will be subject to any reduction in benefits as a result of age, retirement or amendment to the policy. This life insurance coverage will continue until the Insured Person reaches age 70 or would normally retire, whichever occurs first.

* * *

■ We will pay the amount of life insurance in force to the beneficiary if the Insured Person dies before furnishing satisfactory proof of his total disability provided:

1. the Insured dies within one year from the last date for which premium was paid; and

2. we receive proof that the Insured was totally disabled from the date premium payments ceased to the date of the Insured's death; and

3. we receive proof of death not more than two (2) years after the death of the Insured.

* * *

## IV. Analysis

■ Defendant's position that Mrs. Causey's policy terminated prior to her death is premised on the following construction: Pursuant to the "Termination of Coverage" subsection of the "Effective Date Provisions" section, coverage terminated on October 14, 1993, the date Mrs. Causey was no longer actively at work. However, because she was no longer actively at work as a result of a "disability,"[4] the policy continued until October 31, 1994, the end of the twelfth insurance month following the month in which the disability began. At that time, Mrs. Causey's benefits under the group policy permanently ceased, giving her the option of converting the expired group policy into an individual policy pursuant to the "Conversion Privilege" subsection of the "Group Term Life Insurance Benefit" section. This could have been accomplished by submitting a written application for conversion, along with payment of the first premium, by December 1, 1994, thirty-one days after insurance under the group policy ceased. Because Mrs. Causey failed to do this, her coverage terminated as of December 2, 1994.

Plaintiff does not dispute the foregoing construction of the "Effective Date Provisions" and "Group Term Life Insurance Benefit" sections, but argues Mrs. Causey was insured at the time of her death by virtue of the extended coverage provided to "totally disabled" insureds by the "Waiver of Premium" section. Defendant counters that the "Waiver of Premium" section does not provide extended coverage, but merely provides for the waiver of

4. An insured who has sustained a "disability," as that term is used in the "Termination of Coverage" subsection, is not necessarily "totally disabled" as that term is used in the "Waiver of Premium" section.

premiums where coverage otherwise exists under the "Effective Date Provisions" section. Consequently, the issue on appeal is the proper construction of the "Waiver of Premium" section of the policy.

As explained in the discussion that follows, we find that the "Waiver of Premium" section *does* provide extended coverage for totally disabled insureds as long as they satisfy the conditions precedent set out in paragraphs one (relating to the initial period of extended coverage) and three (relating to subsequent twelve-month periods of extended coverage) thereof.[5] We also find, however, that Mrs. Causey failed to comply with all such conditions, namely the submission of written proof of total disability within twelve months of its onset. Notwithstanding, we hold that plaintiff is entitled to the policy's life insurance benefits by virtue of paragraph six of the "Waiver of Premium" section. Paragraph six sets forth an exception to the general requirements for extended coverage delineated in paragraph one, allowing the insured's beneficiary to receive the life insurance benefits where, as here, the insured dies prior to submitting proof of total disability, provided certain other conditions are met.

We first address the issue of whether the "Waiver of Premium" section creates an obligation of defendant to continue coverage without the payment of premiums or whether, as defendant contends, it merely provides that defendant will waive premiums as long as coverage is continued under other provisions of the policy. At the center of the parties' dispute is paragraph one of that section, which provides in part:

We will continue an Insured's life insurance benefit under this policy without the further payment of life insurance premium if he becomes totally disabled, provided. . . .

When the provisions of the policy are read in conjunction with each other, as rules of construction admonish us to do,[6] it becomes apparent that defendant's construction of this paragraph must be rejected.

The "Waiver of Premium" section defines "totally disabled" to mean "the Insured Person is prevented because of that disability from performing the main and important duties of any occupation for which he is reasonably suited by means of education, training or experience." The "Termination of Coverage" subsection provides that coverage under the policy terminates on "the date the Insured is no longer actively at work." Reading these provisions together, the conclusion is unavoidable that when an insured becomes totally disabled, he or she can no longer actively work, resulting in the termination of his or her policy pursuant to the "Termination of Coverage" subsection. What happens next depends on how the "Waiver of Premium" section is construed. If that section is construed in the manner urged by defendant, totally disabled insureds could avail themselves of premium-free coverage for only twelve to thirteen months in accordance with the "Termination of Coverage" subsection, that is, from the date of the disability "[u]ntil the end of the twelfth insurance month following the month in which the disability began." At that point, pursuant to the "Conversion Privilege"

**5.** "One purpose of a provision waiving premiums upon the occurrence of the disability is to waive payments of premiums which the insured and insurer contemplated that the insured would likely be unable to pay on account of sickness or other disability ... Other purposes are to provide continued coverage for an insured during the period of total disability for [the risk insured against] and to keep the policy in force so that the insured can resume the payment of premiums after a period of total disability. Such provisions should, therefore, be construed to effectuate the evident intention of preserving the insurance in case of inability to pay premiums and should be very equitably interpreted." 6 Eric Mills Holmes, *Holmes' Appleman on Insurance 2d* § 42.6, at 594–95 (1998) (citations omitted).

**6.** "The terms of the contract are read as a whole to arrive at the intention of the parties." *Ringstreet Northcrest, Inc. v. Bisanz,* 890 S.W.2d 713, 718 (Mo.App.1995).

subsection, the insured would have thirty-one days to convert the group policy into an individual policy or coverage would permanently terminate.

We reject this construction because it nullifies certain language in paragraph three of the "Waiver of Premium" section,[7] which provides (with emphasis added):

> "The initial period for which premium will be waived will retroactively commence with the date of the onset of the disability and will continue while the Insured remains totally disabled for up to twelve (12) months from the date we receive the required proof. *Premium will continue to be waived for subsequent 12–month periods* provided. . . ."

This paragraph expressly allows for the extension of coverage for *succeeding years* beyond the onset of the total disability. However, under the construction espoused by defendant, coverage can be continued beyond the onset of the total disability for only *twelve to thirteen months.* Accordingly, if the "Waiver of Premium" section is not construed as providing extended coverage for consecutive twelve-month periods for insureds who become totally disabled, the italicized language in the quote above, providing for successive twelve-month periods of extended coverage, is rendered meaningless.

Defendant's construction of the "Waiver of Premium" section also renders meaningless certain language in paragraph four thereof. That paragraph provides in part:

> This life insurance coverage will continue until the Insured Person reaches age 70 or would normally retire, whichever occurs first.

If the "Waiver of Premium" section does not provide extended coverage, there is no need for it to provide for the termination of coverage because termination is already provided for in the "Effective Date Provisions" section.

The only way to give effect to all provisions of the "Waiver of Premium" section is to construe it as providing extended coverage for totally disabled insureds. Accordingly, we conclude that had Mrs. Causey submitted written proof of total disability within twelve months of its onset, coverage would have been extended in accordance with paragraph one of the "Waiver of Premium" section.[8] It is undisputed, however, that Mrs. Causey failed to submit such proof within that period of time. Plaintiff argues, however, that because defendant was not prejudiced by the lack of timely notice, it cannot deny coverage on that basis. We need not address this issue, however, because we hold that plaintiff is entitled to the life insurance benefits under paragraph six of the "Waiver of Premium" section.

■ Paragraph six of the "Waiver of Premium" section provides (with emphasis added):

> We will pay *the amount of life insurance in force* to the beneficiary if the Insured Person dies before furnishing satisfactory proof of his total disability provided:
>
> 1. the Insured dies within one year from the last date for which premium was paid; and
>
> 2. we receive proof that the Insured was totally disabled from the date premium payments ceased to the date of the Insured's death; and
>
> 3. we receive proof of death not more than two (2) years after the death of the Insured.

■ There is no dispute the three provisos of this paragraph have been satisfied. The issue, therefore, is the meaning of the

---

7. "A construction which attributes a reasonable meaning to all the provisions of the agreement is preferred to one which leaves some of the provisions without function or sense." *Ringstreet Northcrest, Inc.,* 890 S.W.2d at 718.

8. It is undisputed that all other conditions precedent to continued coverage under paragraph one were satisfied.

**30**

italicized phrase "the amount of life insurance in force." Defendant contends this phrase refers to coverage in effect at the time of death, and argues that, because the group policy terminated on December 1, 1994, the last available date to convert into an individual policy, there was no coverage "in force" on January 22, 1995, the date of Mrs. Causey's death. Reading this paragraph in isolation may very well suggest that interpretation, but we do not read contractual provisions in isolation. Instead, we read the policy as a whole to determine what the parties intended by a particular term or provision. *Ringstreet Northcrest, Inc.*, 890 S.W.2d at 718. Doing so, we find that the same phrase appears in two other provisions of the policy.

It first appears in the "Benefit" subsection of the "Group Term Life Insurance Benefit" section, where it is expressly measured as of the date of death (with emphasis added):

> We will pay the Insured's beneficiary *the amount of life insurance in force as of the date of his death,* provided....

This phrase is also used twice in paragraph four of the "Waiver of Premium" section, just two paragraphs before paragraph six, the paragraph at issue. Paragraph four provides (with emphasis added):

> The Insured will be covered for *the amount of life insurance in force as of the date of disability. The amount of life insurance in force* will be subject to any reduction in benefits as a result of age, retirement or amendment to the policy. This life insurance coverage will continue until the Insured Person reaches age 70 or would normally retire, whichever occurs first (emphasis added).

The first sentence of paragraph four expressly measures the "amount of life insurance in force" as of the date of disability. Although the second sentence omits the language "as of the date of disability" from the same phrase, it can be reasonably inferred the parties intended it to refer to the same period of time as in

the first sentence, i.e., as of the date of disability. To measure this phrase as of the date of death in the second sentence would not make any sense. *See Howe v. ALD Serv., Inc.*, 941 S.W.2d 645, 650–51 (Mo.App.1997) ("Two basic principles for construing contracts are: 1) all provisions of a contract must, if possible, be given effect, and 2) *a contract should be given a reasonable construction.*") (emphasis added) (citations omitted).

We conclude the phrase "the amount of life insurance in force" as used in paragraph six of the "Waiver of Premium" section is ambiguous. Unlike its use in other provisions of the policy, it is used in paragraph six of the "Waiver of Premium" section without any reference—express or implied—to the relevant point in time. When we consult these other provisions for guidance, we learn "the amount of life insurance in force" is measured at both the date of death and the date of disability. The meaning of this phrase in paragraph six of the "Waiver of Premium" section is therefore unclear, as it can be reasonably construed as referring to either the date of disability or the date of death. This is an ambiguity by definition. *See Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo.1993) ("An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract.").

■ Ambiguous terms are construed against the insurer. *Id.* As already noted: (1) Mrs. Causey died within one year from the last date for which premiums were paid; (2) defendant received proof she was totally disabled from the date payment of premiums ceased to the date of her death; and (3) defendant received proof of Mrs. Causey's death within two years thereafter. Accordingly, we hold that plaintiff, as the beneficiary under Mrs. Causey's policy, is entitled to receive "the amount of life insurance in force" *as of the date of disability,* October 14, 1993.

The judgment on Count II is affirmed. The judgment on Count I is reversed and the cause remanded for further proceedings consistent with this opinion.[9]

RICHARD B. TEITELMAN, P.J., LAWRENCE E. MOONEY, J., concur.

---

**9.** Since we do not reach the issue of whether defendant was prejudiced by Mrs. Causey's failure to provide timely notice of total disability, we deny as moot plaintiff's motion to file a supplemental legal file as well as defendant's motion to strike portions of plaintiff's legal file.