255 S.W.2d 451 (1953)
BARTON
v.
FARMERS INS. EXCHANGE.
No. 7121.
Springfield Court of Appeals. Missouri.
February 17, 1953.
*453 Robert C. Hyde, Poplar Bluff, Sam Mandell, Kansas City, for appellant.
Robert L. Hyder and Green & Green, West Plains, O. A. Tedrick, Poplar Bluff, for respondent.
VANDEVENTER, Presiding Judge.
This is an action on an insurance policy for damages resulting from the upset of an automobile. The jury's verdict was for $1125 actual and $800 punitive damages. The defendant appealed.
The original petition was filed on the 3rd day of January, 1949, and alleged that the defendant was a corporation, the issuance of the policy on the 21st day of October, 1948, and that within 30 days thereafter and while the policy was in full force and effect, plaintiff's automobile was upset, resulting in a total loss and damaged "to such an extent as to make it unfit for further use, and damaging it so that it could not be restored to its former excellent condition." The value prior to the upset was alleged to be $2300 with $50 deductible. The policy was attached to and made a part of the petition.
Actual damages in the sum of $2250 was prayed for and in addition, $225 for vexatious delay and for a reasonable attorney's fee, alleged to be the sum of $450.
An answer was filed, a trial had on June 15, 1949, with verdict for plaintiff. Upon an appeal the case was reversed and remanded for new trial. 229 S.W.2d 23. A change of venue was taken from Howell to Butler County on June 5, 1950. An amended petition was filed November 10, 1950, again alleging that the original value of the car was $2300, that it was damaged by an upset after which its value was only $300, and alleging defendant's liability to be $2,000. Further, that immediately after the upset, defendant took possession of plaintiff's car and retained it until the ___ day of July, 1949, when plaintiff was forced to replevin it; that on January 14, 1949, defendant demanded that plaintiff sign a complete release for the sum of $629.25, well knowing that the automobile had been damaged much in excess of that sum, that in June, 1949, defendant demanded that plaintiff accept the car in its repaired condition and release defendant, although said automobile had not been fully repaired or restored to its former condition; that in the meantime, the market value of automobiles had materially declined and that plaintiff offered to let defendant sell it and pay plaintiff the difference between the sale price and the value of the car prior to the collision. That defendant wrongfully continued to retain said car until it was replevined by plaintiff in July, 1949, all of which was maliciously done for the purpose of forcing plaintiff to accept settlement for an amount far less than the policy provided, for all of which, plaintiff claimed punitive damages in the sum of $5,000 in addition to ten percent for vexatious delay and a reasonable attorney's fee.
In its answer, defendant admitted issuance of the policy, denied the retention of the car as alleged in the petition, denied that it demanded a release upon payment of $629.25, denied the retention of its possession until sometime in June, 1949, and denied the statement that it was not fully repaired to its former condition. Defendant further pleaded a provision of the policy which stated that the limit of its liability should not exceed the actual cash value of the automobile or a part thereof at the time of the loss, nor could it exceed the amount it would cost to repair or replace the automobile or such part, which section further provides that the defendant may pay for the loss in money or may repair or replace the automobile to its former condition.
Defendant's answer then stated that the automobile was damaged on or about November 19, 1948, that it received notice of such fact on November 20th, and immediately secured bids for the repair of plaintiff's car and that it received one from Burns' Garage of West Plains for the sum of $679.25 and elected to have the repairs made by said Burns' Garage. That plaintiff *454 refused to permit the defendant to have such repairs made and on January 6, 1949, commenced action in the Circuit Court against defendant and that on January 14, defendant offered to pay plaintiff $629.25 in lieu of repairs which he had refused to permit defendant to make, such sum being the amount of the Burns' Garage bid, less $50 deductible, and that plaintiff refused to accept the same. Further answering that about March 15, 1949, plaintiff agreed that defendant could proceed with the repairs to the automobile, that the repairs were made and the automobile then tendered to the plaintiff and that he refused to accept the same; that on June 24, 1949, plaintiff replevined the car in Howell County, recovered possession of it and has had it ever since. Defendant then counterclaimed for $50, the amount declared by the policy to be deductible from any collision loss.
Inasmuch as defendant contends that the court should have sustained its motion for a directed verdict at the close of all the evidence, we will review the evidence upon which plaintiff relies for an affirmance of the judgment. In determining its sufficiency for submission to the jury, this court must consider the whole evidence and give the plaintiff the benefit of all facts and circumstances favorable to or tending to support his theory of the case, with every reasonable inference that may be drawn therefrom, as well as any evidence offered by defendant favorable to plaintiff, disregarding any of defendant's evidence contradicting or unfavorable to plaintiff's evidence. Silvey v. Herndon, Mo.App., 234 S.W.2d 335. Smith v. St. Louis-San Francisco R. Co., Mo.App., 214 S.W.2d 443. Lemonds v. Holmes, Mo.App., 236 S.W.2d 56, 22 A.L.R.2d 418.
Bearing this rule in mind, plaintiff's evidence showed the issuance of the policy on a 1947 Oldsmobile Deluxe 78, that it was in full force and effect on the 19th day of October, 1948, when plaintiff permitted another person to drive it and that it was upset and damaged. This was within 30 days after the purchase of the car and the procurement of the policy. The value of the car was shown to be $2300. The upset bent both sides of the car, the hood, the trunk and the doors, sheared every rivet off of a wheel, threw the tire off, the chrome on the front grill was scratched, the front seat was loosened and pushed up under the cowell, the back seat was forward where the front seat should have been and some of the glass was broken. It had turned over several times after hitting a corner post. The top was dented and very badly rolled up, the underneath side of the car was damaged and the frame bent. It was towed immediately after the upset to the Chevrolet Garage in West Plains. After the collision, the agent of the insurance company, a Mr. Gillette, was notified and the agent agreed to get some bids to ascertain the amount of the repairs, to which plaintiff agreed. Plaintiff suggested the Chevrolet Garage or the Ford Garage, or any reliable place in West Plains or Springfield. Frequently thereafter, plaintiff tried to locate the agent to see what had been done and finally located him in a night club. The agent then told the plaintiff that the car was to be repaired by Mr. Burns of the Burns Garage, a small body shop at the edge of West Plains, which was a very small place, probably a two-car garage. Plaintiff at that time suggested two other places in West Plains and two in Springfield if the car was to be repaired. Plaintiff had dealt in cars to some extenthad owned several automobiles prior to this one and stated that the reasonable market value of the car prior to the collision was $2300, that the value of the salvage after the upset was probably worth $400 to $500. The agent refused to have the car repaired at the Ford or Chevrolet garage. Plaintiff testified that Mr. Burns had not been in business very long, that he only stayed there a short time after his bid was submitted and that he didn't know where he was at the time of the trial.
Sometime in May, 1949, a representative of the defendant presented the car to plaintiff and his attorney, claiming it had been repaired and was then in good shape, and asked them to accept it and give defendant a release. Plaintiff examined it and ascertained that the body wasn't well repaired, it had waves in the top, hood and left side, *455 scratches on the front, the metal work wasn't like it was originally and the car did not drive well. Later the plaintiff replevined the car and drove it to Kansas City and on the way one wheel fell off. He was compelled to repair the wheel and buy a complete set of new tires and he sold it, or had it sold, at auction at Kansas City for $1225. He was without the use of his car from the day of the upset until the following July. On January 14, 1949, he received a letter from the company enclosing a release to be signed if he would accept $625.50 as full damages. He refused to do it. This was said to be the amount of the Burns' bill less the $50 deductible.
There had been a mortgage on the car in the sum of $1036.15 later reduced to about $900, which plaintiff paid off after the car was sold at auction in Kansas City. When an agent of the company offered to have the Burns' Garage repair the car, plaintiff objected because he didn't think Burns was a capable mechanic and because he understood that Burns was to guarantee the work instead of the defendant. He did not care to accept Burns' guarantee. Plaintiff offered to let defendant's agent sell the car and then pay the amount of the judgment he had procured at the first trial. He would have accepted the car if it had been completely repaired by a reliable agency. Plaintiff went to see agent Gillette several times and had told him he didn't think the car was properly repaired. Plaintiff said he didn't want the car in its repaired condition but wanted to be paid the difference between its value before the upset and its value after it was repaired.
Appellant contends, first, that the petition does not state a cause of action upon which any relief can be granted. The insurance policy, among other things, assumed liability for damages for "collision or upset" for actual cash value less $50 deductible. For this there was an extra charge of $46 in premium. The policy states the actual cost of the motor vehicle to be $2300. Under the general heading "Insurance agreements" and under the sub-heading, "Collision or upset" is the following clause:

"Coverage FTo pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto."
At the bottom of the last page of the 6-page policy we find this paragraph:
"(11) Limit of liability: settlement options: no abandonmentcoverages C, D, E and F
The limit of the Exchange's liability for loss shall not exceed the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss nor what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, nor the applicable limit of liability stated in the declarations.
"The Exchange may pay for the loss in money or may repair or replace the automobile or such part thereof, as aforesaid or may return any stolen property with payment for any resultant damage thereto at any time before the loss is paid or the property is so replaced, or may take all or such part of the automobile at the agreed or appraised value but there shall be no abandonment to the Exchange."
It will be seen from these provisions that the defendant's liability shall not exceed the actual cash value of the automobile or any part thereof or what it would cost at the time of the loss to replace or repair the automobile "of like kind and quality." It further gives the defendant the option to pay for the loss in money or to replace the automobile or such part, or it may take the automobile at the agreed or appraised value. If the insurance company does not exercise this option, under coverage F, it would be liable for the damage to the automobile by an upset, less the $50 deductible. At the time the first petition was filed in this cause, the defendant had neither repaired the automobile nor offered the amount it would cost to repair it, in cash, nor paid for *456 the damage. In plaintiff's petition, it took the position that the automobile was a total loss. It attached to the petition and made a part of it the insurance policy which contained the provisions above quoted. See Section 509.130 V.A.M.S., Corbin v. Hume-Sinclair Coal Mining Co., 361 Mo. 888, 237 S.W.2d 81. The jury in that trial found for plaintiff and it was reversed by this court, 229 S.W.2d 23. In the second trial, which is the appeal before us now, the allegation was that the value of the automobile at the time of the upset was in excess of $2300 and that afterwards it was worth, not to exceed $300. Plaintiff prayed judgment in the amount of $2000 as actual damage and again attached the insurance policy and made it a part of the petition.
While we would not suggest this pleading as a model for future litigation in this case, there can be no question but what the defendant was fully aware of the plaintiff's claim and under the modern liberal construction of pleadings, we think the defendant could not have been injured by any insufficiency that it might contain. It can be amended at a re-trial, if one is had.
Plaintiff contends that Instruction No. 1 was erroneous because it failed to require a finding that defendant had breached a contractual duty to plaintiff and also that it submitted an improper guide as to the measure of damages. When the petition in the first trial was filed, it must be remembered that the automobile had not been repaired, the costs of repairs had not been tendered to plaintiff, nor had payment of the damages been made. At the trial which resulted in this appeal, we are faced with an entirely different state of facts. An attempt had been made to repair the automobile, the plaintiff had obtained possession of it by a suit in replevin and it had been sold for $1225. So we have an entirely different set of facts now confronting us.
Under the situation here, it is clear that the measure of damages is not the difference between the value of the automobile immediately before and its value immediately after the upset. The evidence shows that the automobile was worth $2300 at the time of the upset and was worth approximately $450 afterwards. Under the instruction the jury could have returned a verdict for $1850, if they wished. The plaintiff had already realized on the automobile $1225, which was $775 more than its value after the upset. If the jury had returned a verdict for $1850, the plaintiff, having already received $1225, would have recovered the entire value of his automobile and $775 as actual damages.
Under the facts in this trial, the measure of damages should have been the difference between the value of the automobile prior to the upset and its value when repaired and presented to the plaintiff for acceptance. In other words, the maximum of actual damages that could be recovered by the plaintiff would have been the difference between $2300 and $1225 or $1075. The jury returned a verdict of actual damage in the sum of $1125 or $50 more than they could have given under a proper instruction.
We are met at this juncture with the fact that while the plaintiff's testimony shows the necessary purchase of a new set of tires and the repair of a wheel, that came off on the trip to Kansas City, (and assuming but not deciding that these expenditures were properly within the coverage of the policy) the evidence does not show what these tires and repairs cost and there was no way for the jury, under the evidence, to find that amount, except by guess-work or speculation, but apparently the jury allowed $50 for these expenditures. We do not think that proof that the automobile after the first trial sold at auction in Kansas City 300 miles away from West Plains and brought $1225 was sufficient proof of the value of it at West Plains on the day it was offered as repaired to plaintiff. Proof should have been offered as to its reasonable market value at West Plains as of the day it was offered to plaintiff by an agent of defendant. Clearly the instruction complained of by appellant was erroneous.
Appellant seems to contend that when it had the car repaired and presented to plaintiff and the plaintiff rejected it, that its liability ended. We do not think so because the plaintiff's testimony shows that even after the repairs were made, the car *457 was not placed in its former condition, did not run well, nor did it have the appearance it had prior to the upset. Certainly it was appellant's duty, if it elected to repair instead of pay, to put the automobile in as good a condition both in appearance and mechanically as it was prior to the upset. This issue should have been submitted to the jury in proper instructions. The jury believed the plaintiff's testimony and must have found that the automobile was inadequately repaired.
Appellant next objects to the giving of Instruction No. II relative to punitive damages on the ground that it fails to hypothesize any facts and gives a roving commission to the jury in the fixing of the amount thereof. Under this instruction the jury awarded $800 as punitive damages. We think that award was erroneous for two reasons; in the first place there can be no punitive damages allowed in an action of this kind for mere breach of contract. Zweifel v. Lee-Schermen Realty Co., Mo. App., 173 S.W.2d 690; Norris v. Letchworth, 167 Mo.App. 553, 152 S.W. 421; Watkins v. Hovey, D.C., 88 F.Supp. 478. Restatement of the Law, Vol. 1, Contracts, § 342; 25 C.J.S. Damages, § 120; 15 Am. Jur. Damages, § 273; 20 Appleman's Insurance Law, § 11255.
In the second place we do not think the conduct of defendant was such as to justify punitive damages if it could have been allowed in an action of this character.
Immediately after the upset and consequent damage to the car, the agent of the insurance company viewed the wreckage and informed the plaintiff that he intended to get bids from various concerns to make the repairs. The evidence shows that bids were obtained and that while the plaintiff was willing that the repairs should be made, he had no confidence in the lowest bidder, Mr. Burns of the Burns' Garage and so informed the insurance company. Plaintiff knew that these negotiations were in progress but he filed a suit on the third day of January, about two and one-half months after the upset and all the while he knew there had been no denial of liability on the part of defendant or a refusal to either pay the damages or repair the car. Within two weeks after the suit was filed, the company offered to pay the plaintiff the amount of the Burns' bid less the $50 deductible and plaintiff rejected this but did agree that the company could bring the automobile to Springfield and have it repaired. This it did at a cost of about $820. It was then brought back to West Plains, offered to plaintiff, who refused it because he did not think it had been repaired properly as to appearance or mechanically. He then tried his law suit and obtained a judgment for $2250, which upon appeal, we reversed. 229 S.W.2d 23. Immediately after he procured this judgment, plaintiff replevined the automobile, took it to Kansas City and sold it. It seems to us that while the appellant might have been somewhat slow in moving toward repairs or settlement, that it was not so delinquent in doing so as to be liable for punitive damages if such had been recoverable.
Appellant objects to the admission of testimony as to the value of plaintiff's car immediately before and after the collision. We do not see how appellant could be injured by this testimony, even if inadmissible. Appellant further objects because the court erroneously excluded Exhibits E, F, and G. Exhibits E and F are not included in the transcript but these Exhibits, or what purports to be them, are set out in appellant's brief. Exhibit E is merely a letter from an adjustor of defendant stating that it is proceeding with the repair of the car. The evidence shows that plaintiff and defendant agreed to repair the car, that it was repaired and after the repair, offered to plaintiff at West Plains, who refused to accept it upon the ground that it was not adequately repaired. If this exhibit was admissible at all, it was merely cumulative of that which was not denied and could not have injured defendant.
Exhibit F is a letter written to the attorney for plaintiff by an adjustor for defendant, was clearly self serving and inadmissible.
Exhibit G was an advertisement put in the West Plains paper by defendant stating that the car had been fully repaired, *458 that it had been repaired in Springfield and was now located at Kellett's Garage in West Plains where it might be viewed by the public, which was welcomed to make such an inspection. It further stated that the insurance company "especially invited the jury which heard the case to inspect the repaired machine." There was no proof that plaintiff or plaintiff's counsel ever saw this article, which was an advertisement but written in the language of a news article. It was Ex Parte, and self serving and was inadmissible.
Instruction No. 1 was erroneous as to the measure of damages, and for failure to present defendant's theory of the case.
The cause should be reversed and remanded. It is so ordered.
McDOWELL, J., concurs.
BLAIR, J., not sitting.