Riley S. SENTER, Plaintiff-Appellant,

v.

TENNESSEE FARMERS MUTUAL
INSURANCE COMPANY,
Defendant-Appellee.

Court of Appeals of Tennessee,
Eastern Section.

Aug. 14, 1985.

Rehearing Denied Sept. 19, 1985.

Application of Both Parties for
Permission to Appeal Denied by
Supreme Court Dec. 30, 1985.

Patricia D. Murphy, Harriman, for plaintiff-appellant.

John T. Johnson, Jr., Knoxville, for defendant-appellee.

## OPINION

GODDARD, Judge.

Dr. Riley S. Senter, Plaintiff-Appellant, appeals certain actions of the Trial Judge in this jury case against Tennessee Farmers Mutual Insurance Company, Defendant-Appellee. This case involves a dispute as to repairs made under an insurance policy upon the Plaintiff's automobile.

On appeal Dr. Senter raises four issues: (1) whether the Court erred in its jury charge, (2) whether the Court erred in allowing testimony as to the car's condition more than 17 months after repairs had been made, (3) whether the Court erred in making comments about witnesses in the presence of the jury, and (4) whether the Court erred in directing a verdict against Dr. Senter in his claim for rental value of a replacement automobile.

On June 9, 1982, Mrs. Senter was involved in an accident which damaged Dr. Senter's 1982 Buick Riviera. The Senters notified Tennessee Farmers Mutual Insurance (TFM) which had issued a policy covering the car. Dickie Reasonover, a claims adjuster for TFM, prepared a repair estimate in the amount of $5793.17.[1] After Dr. Senter was notified that TFM intended to repair instead of replace the automobile he retained Attorney William A. Newcomb to represent him.

Mr. Reasonover sent a letter to Mr. Newcomb on July 13, 1982, requesting that authorization be given to start repairs. Mr. Newcomb did not respond until September 10, 1982, when he sent a letter to Mr. Reasonover which listed five items to be repaired that were not on Mr. Reasonover's estimate. Repairs were finally begun on October 4, 1982. After the car was repaired, Mr. Reasonover sent a release form to Dr. Senter which he never signed. TFM heard nothing further from Dr. Senter until this suit was filed in March 1983.

The first issue raised by Dr. Senter is whether the Trial Judge erred in his charge to the jury. The portion of the charge objected to is as follows:

1. The actual repair cost was approximately $6500.

An insurance company does not have to repair an automobile so as to make it exactly the same as it was before the accident.

I further charge you that the word "value," as spoken of here does not mean value as based on psychological factors or feelings of prospective purchasers of the vehicle, but rather value as it relates to the function and appearance of the vehicle. In other words, if the vehicle has been repaired substantially to its function and appearance, then the company has fully performed its obligation even though the vehicle might not sell for as much if a prospective purchaser learned the vehicle had been wrecked.

Dr. Senter contends that the Judge's charge limits the factors available to the jury in determining whether TFM had substantially restored the automobile's function, appearance, and value, by not allowing psychological factors of the prospective purchaser to be used in the determination of the fair market value of a wrecked vehicle.

The earliest Tennessee case which is pertinent to this issue is *Stoops v. Fire Insurance Co.*, 160 Tenn. 239, 22 S.W.2d 1038 (1930). In *Stoops* the plaintiff wrecked his automobile. Its value just prior to the accident had been $2000. The cost to repair the vehicle was $1100. This action was brought claiming an additional amount as depreciation in the value of the car which the repairs could not restore. The Court's opinion does not make it clear whether the depreciation was caused by the vehicle's status as "wrecked" or whether the repairs would be ineffective to totally restore the automobile. However, the Court's holding is certainly broad enough to encompass either situation (160 Tenn. at 247; 22 S.W.2d at 1040):

The effect of the chancellor's decree herein is that the cost of repairs and replacement, reported by the appraisers as $1,100, is not the full measure of the insurance to which appellee is entitled, unless such repairs and replacements will restore the value possessed by the automobile at the date of the accident. In this we concur, and the decree of the chancellor will be affirmed. The cause will be remanded for further proceedings as ordered by the chancellor.

*Mason v. Tennessee Farmers Mut. Ins. Co.*, 640 S.W.2d 561, 566 (Tenn.App.1982), another case cited by the parties, states:

The law in Tennessee is well-established that any option which an insurance company may have as to repair or replacement of the property is not an absolute right. Rather, it is conditioned on whether the property can be substantially restored to its fair market value immediately prior to the loss. If this cannot be done, the sole method of complying with the insurance contract is to pay to the insured the loss of value. *Stoops v. First American Fire Insurance Co.*, 160 Tenn. 239, 22 S.W.2d 1038 (1930); *Weems v. Service Fire Insurance Co. of New York*, 181 Tenn. 1, 178 S.W.2d 377 (1944); *England v. Tennessee Farmers Mutual Insurance Co.*, (Tenn.App., filed November 21, 1980).

*England v. Tennessee Farmers Mutual Insurance Co.*, supra, states the responsibilities of the insurer in broader terms:

Where an insurer properly exercises its option to repair damaged property, it tacitly represents that it will substantially restore the vehicle as to function, appearance and value.

This was the formulation of the rule used by the Trial Court and we believe it is a correct statement of the law. However, while these cases do illustrate the duties of the insurer if he elects to repair, they do not address the question of whether recovery can be had for diminution of value despite the fact that the automobile has been restored to its former function and appearance.

The only case which appears to be in point is *Potomac Ins. Co. v. Wilkinson*, 213 Miss. 520, 57 So.2d 158, 160 (1952). The Mississippi Court in a similar fact situation found that:

The reasonable market value of the car after full repairs is the basis of estimate.

Such value may not include a sentimental or subjective sense of depreciation, although it would not in a proper case exclude such depreciation as may be caused in market value by its status as a wrecked car.

. . . .

... Instructions predicated upon partial loss should submit as a basis of estimate the cost of all repairs necessary and adequate to restore its former function and efficiency. If such repairs can restore also its market value as of the date of the damage, such cost of repair is the measure of liability. If, despite such repairs, there yet remains a loss in actual market value, estimated as of the collision date, such deficiency is to be added to the cost of the repairs. It is not the value to the owner which controls, but the value to those who constitute the market in used cars.

▮▮▮ We agree with the Mississippi Court and we find that the Trial Court erred in his instructions as to fair market value. Each of the three factors—function, appearance, and value—must be substantially restored. If the repairs restore function and appearance but not fair market value, then the insured is entitled to recovery. We believe that the measure of recovery should be the difference in the fair market value of the property immediately before the accident and immediately after the accident assuming all repairs had been completed. However, any depreciation in value due to events unrelated to the accident (such as a declining market for diesels) cannot be recovered.

In the case before us there is ample proof that a car which has had $6500 in repairs will probably have a lower fair market value than a similar car that has never been wrecked. Witnesses for both parties testified that Dr. Senter's automobile would be worth less on the open market than would otherwise be the case. On remand the jury can award damages only if the automobile has not been substantially restored to its fair market value. If the jury finds there has been minimum diminution in value, but the car has still been substantially restored to its fair market value, there can be no recovery.

▮▮▮ The second issue raised is whether the lower Court erred in allowing testimony of TFM's witnesses concerning the value of the automobile at the time of trial, which was more than 17 months after repairs had been completed. TFM contends that the testimony as to Dr. Senter's automobile just before trial was necessary to impeach Mr. Larry Ward. Mr. Ward testified that the car was worth $6500 after repairs had been completed. The estimates given by TFM's witnesses were substantially above this amount even though they were given much later and the market for diesels had declined in the interim. We do not believe the Trial Court erred in allowing the introduction of this testimony, though we do reiterate that the crucial point in time is the value of the vehicle immediately after the accident, assuming the repairs which were later made had already been made.

▮▮▮ The third issue is whether the lower Court erred by stating in the presence of the jury that nothing bad had been said about Gene Peterson and that the witness William Newcomb [2] was not a good witness. As to the comment concerning Mr. Peterson, no witness for either party questioned Mr. Peterson's credibility or integrity. Although a judge should clearly avoid any statement which could be construed by the jury as an endorsement of a witness' testimony, we believe that even if error was committed it was harmless.

▮▮▮ In addition, the Court's comment about Mr. Newcomb's testimony was not directed toward Mr. Newcomb's credibility, instead it was directed at every lawyer's inability on the stand to act as a witness rather than an advocate. The disputed comments came immediately after Mr. Newcomb began to interrupt the attorney for TFM:

2. Mr. Newcomb withdrew as counsel for Dr. Senter after he realized he would have to testify.

Q  All right, let's look at your—

A  If you'll get my—

THE COURT: Now, Mr. Newcomb, just answer his questions.

A  I'm sorry.

THE COURT: You're just like a lawyer. You can't testify. No lawyer can testify. We're all in the same boat.

A  Your Honor made that observation earlier.

THE COURT: I'll rule on that and on the objections. Let me rule on those.

A  Yes, sir.

THE COURT: Just answer his questions.

A  I apologize to the Court.

We do not find that the lower Court committed prejudicial error in chiding Mr. Newcomb for being overly responsive.

The final issue is whether the lower Court erred in directing a verdict against Dr. Senter's claim for the rental value of a replacement automobile he used while the Buick Riviera was being repaired. There is no dispute that the policy does not provide for rental expenses. However, Dr. Senter contends that since the Buick was not substantially restored to its former function, appearance and value that he should be entitled to consequential damages—including rental value of a replacement car.

  In support of his argument Dr. Senter cites *Lonco Trucking v. American Road Ins. Co.*, 378 So.2d 569 (La.App.1979). In this case the owner of a wrecked truck was entitled to recover damages for loss of use occurring when repairs were not made within a reasonable time. We do not view *Lonco* as persuasive since we believe the car was repaired in a reasonable time under the circumstances. The facts of the case before us suggest that Dr. Senter's car could have been repaired more quickly had Dr. Senter's attorney responded promptly to TFM's request for authorization to begin repairs.

For the foregoing reasons we affirm the Trial Court's directed verdict on the issue of rental value of a replacement vehicle, and we reverse the Trial Court on the issue of damages. This case is remanded for retrial as to that issue. Costs of appeal are adjudged against Tennessee Farmers Mutual.

PARROTT, P.J., and FRANKS, J., concur.

## OPINION ON PETITION TO REHEAR

GODDARD, Judge.

The Defendant has filed a petition to rehear contending that the Court has expanded the contractual limitation of liability of its policy by providing that the Plaintiff may recover for the repair of his vehicle, plus depreciation. The petition to rehear misinterprets the opinion. Perhaps we did not make it clear, but the opinion holds that where, and only where, repairs do not restore the vehicle to its former value, the plaintiff is entitled to that difference in addition to the costs of repairs.

For the foregoing reason the petition to rehear is denied at the cost of the petitioner.

PARROTT, P.J., and FRANKS, J., concur.