Catherine CAMDEN,
Plaintiff/Appellant,

v.

STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPANY,
Defendant/Respondent.

No. ED 79120.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 13, 2001.

Application for Transfer to Supreme Court
Denied Dec. 26, 2001.

Application for Transfer Denied
Feb. 26, 2002.

■■■■■■■■■■■■

Carnahan & Garvin, LLLC, Michael A. Garvin, St. Louis, MO, Fleming & Associates, LLP, George M. Fleming, Sylvia Davidow, D'Lisa R. Simmons, Anita Kawaja, Houston, TX, Attorneys for appellant.

Bryan Cave LLP, Thomas E. Wack, Kenneth J. Mallin, St. Louis, MO, Attorneys for respondent.

MARY K. HOFF, Judge.

Catherine Camden (Claimant) appeals from the judgment entered after the grant of summary judgment in favor of State Farm Mutual Automobile Insurance Company (Insurer) in Claimant's class action[1] to determine whether Insurer was required, under the terms of its automobile insurance policy (policy), to cover inherent diminished value in damaged vehicles otherwise covered under the policy. We affirm.

The undisputed record discloses the following: Insurer issued policy to Claimant, which contains the following relevant provisions:

SECTION IV—PHYSICAL DAMAGE COVERAGE

Loss—means when used in this section, each direct and accidental loss of or damage to:

1. *your car* . . .;

Limit of liability—Comprehensive and Collision Coverages . . .

The limit of our liability for *loss* to property or any part of it is the lower of:

1. the actual cash value; or

2. the cost of repair or replacement.

Actual cash value is determined by the market value, age and condition at the time the *loss* occurred. Any deductible amount that applies is then subtracted.

The cost of repair or replacement is based upon one of the following:

1. The cost of repair or replacement agreed upon by *you* and us;

2. The competitive bid approved by us; or

3. An estimate written based upon the prevailing competitive price.

Settlement of Loss—Comprehensive and Collision Coverages . . .

We have the right to settle a *loss* with *you* or the owner of the property in one of the following ways:

1. pay the agreed upon actual cash value of the property at the time of the *loss* in exchange for the damaged property . . .;

2. pay to:

 a. repair the damaged property or part, or

 b. replace the property or part . . .

(Emphasis in original.)

In August 1998, Claimant was involved in an automobile accident. Claimant notified Insurer of the accident and an adjuster inspected Claimant's vehicle. Based upon that inspection, Insurer paid Claimant for the repairs to her vehicle. Insurer paid the amount of the estimate, which was approximately $6,000. Claimant does not allege the repairs were improperly performed nor that Insurer failed to pay the cost of full and adequate repairs.

At that time, Claimant did not make a claim against Insurer for any purported

---

1. The class action was never certified, therefore we only have Claimant before us. *See* *Parker v. Pulitzer Pub. Co.,* 882 S.W.2d 245 (Mo.App. E.D.1994).

diminished value to her vehicle. Claimant defines diminished value as the difference between the pre-damage value of a vehicle and its value after having been properly repaired. Specifically, Claimant alleges "[insurer] knowingly ignores that which every one (sic) knows from experience and common sense: the fact that damaged automobiles, by the very nature of their damage and subsequent repair, are worth less than similar automobiles which have not been damaged." We herein refer to this concept as inherent diminished value.

In September 1999, Claimant sold her vehicle. Claimant received $7,500 for trade-in on the vehicle. She did not tell the buyer that she should be compensated for diminished value. She did not seek an appraisal or professional advice to ascertain if there was diminished value to her vehicle. Claimant cannot quantify the amount of diminished value she purportedly suffered and has no knowledge as to the current whereabouts of the vehicle.

Subsequently, Claimant filed this class action suit against Insurer alleging Insurer had breached its policy with her and a class of similarly situated policy holders by not compensating them for the diminished value of their damaged and repaired vehicles.

Insurer filed a motion for summary judgment seeking a ruling that diminished value is not a covered loss under the provisions of its policy. In granting Insurer's motion, the trial court found no ambiguity in the limit of liability language, noting that Claimant had not specifically alleged such ambiguity. Further the trial court found diminished value was not recoverable in this case, under the unambiguous terms of the policy and, in any event, there was no showing that the value of the vehicle following repair or replacement was necessarily inherently diminished.

This appeal followed. Claimant raises four points; she argues the trial court erred in granting summary judgment in favor of Insurer because (1) an analysis of the policy under contract construction rules does not establish that Insurer is entitled to judgment as a matter of law; (2) the trial court did not follow Missouri precedent; (3) the trial court failed to consider the majority view of other states; and (4) alternatively, Insurer's policy is ambiguous.

■ In appeals from summary judgment, we "review the record in the light most favorable to the party against whom judgment was entered" and our review is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Whether to grant summary judgment is purely an issue of law. *Id.* Because the trial court's judgment is based upon the record submitted and the law, we "need not defer to the trial court's order granting summary judgment." *Id.*

■ As its disposition aids in resolving Claimant's other arguments, we begin by addressing the issue of whether the policy is ambiguous.[2] We find it is not. "An ambiguity exists when there is duplicity, indistinctness or uncertainty in the meaning of the language in the policy." *Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 814 (Mo. banc 1997). The language used is viewed "in the meaning that would ordinarily be understood by the

**2.** We note there is a question whether the issue of ambiguity is properly before this Court. We will not entertain arguments which an appellant has failed to raise below. *Kamerick v. Dorman*, 907 S.W.2d 264, 266 (Mo.App. W.D.1995). However, our review of the record indicates the issue was raised in the court below, albeit briefly, and therefore we will review it.

layman who bought and paid for the policy." *Krombach v. Mayflower Ins. Co. Ltd.,* 827 S.W.2d 208, 210 (Mo. banc 1992). Words are ambiguous if they are "reasonably open to different constructions." *Gulf Ins. Co.,* 936 S.W.2d at 814. We construe ambiguous insurance policy provisions against the insurer. *Id.*

■ Claimant does not direct us to specific words as being ambiguous but rather suggests this Court should look at the limit of liability/"repair or replace" provisions in conjunction with Insurer's agreement to cover loss and the policy exclusions. Claimant argues that when viewed from the perspective of an average policyholder, the provisions may be uncertain and open to different constructions. We disagree. In our review of the relevant policy, we find no duplicity, indistinctness nor uncertainty. Insurer opted to repair the vehicle and paid for the repair. The limit of liability provision clearly states insurer's liability is the lower of the actual cash value or payment for the repair. The settlement of loss section clearly states insurer's payment for the repair of damaged property is one of the ways insurer may settle a loss.[3] Therefore, these provisions direct a layman as to what they are entitled to under those provisions. We find no ambiguity in the relevant provisions in the policy.

■ If the insurance policy is unambiguous, we enforce the policy as written. *Peters v. Employers Mut. Cas. Co.,* 853 S.W.2d 300, 302 (Mo. banc 1993). We consider a contract as a whole, not just as isolated provisions or clauses. *Chehval v. St. John's Mercy Medical Center,* 958 S.W.2d 36, 39 (Mo.App. E.D.1997). If a policy term is undefined it should be given its common or usual meaning, or the meaning the policyholder would give it, not

the insurer's technical definition. *Krombach,* 827 S.W.2d at 210.

Claimant points to different sections of the policy to support her argument that diminished value is covered under the terms of the policy. Claimant argues the term "loss" is not defined in the definitions section of the policy, nor, she argues are the terms "direct and accidental", used in the provision of Section IV, defined in the policy. Further, Claimant argues the limitation of liability/"repair or replace" sections neither define nor limit what is covered in the policy; and that the absence of an exclusion illustrates that diminished value is a covered loss. We disagree.

Claimant first points to the absence of a policy definitions for the terms "loss," "direct" and "accidental" in the loss definitions of Section IV. Claimant turns to Black's Law Dictionary to clarify those undefined terms. We find it unnecessary to resort to Black's. Claimant then attempts to define the limitation of liability/"repair or replace" sections using numerous treatises. We find it unnecessary to resort to these treatises. These terms can be understood in the context of the policy.

Section IV states in relevant part:

"Loss——means, when used in this section, each direct and accidental loss of or damage to:

1. *your car* . . .;

\* \* \*

The limit of our liability for *loss* to property or any part of it is the lower of:

1. the actual cash value; or

2. the cost of repair or replacement . . .

**3.** We will address the exclusionary language

in a subsequent point.

\* \* \*

We have the right to settle a *loss* with *you* or the owner of the property in one of the following ways:

1. pay the agreed upon actual cash value of the property at the time of the *loss* in exchange for the damage property ...;

2. pay to:
 a. repair the damaged property or part, or
 b. replace the property or part ..."

(Emphasis in original.)

An examination of these sections illustrates that Insurer is obligated, under the policy, to pay the lower of "actual cash value" *or* the cost of repair. The policy allows Insurer, when settling a loss with a policyholder, to choose to repair the vehicle. The policy does not add any language beyond repair. For instance it does not state, as Claimant would argue, Insurer will pay to repair the vehicle *and* pay any loss in value. We reiterate that this is not a case where Claimant contends the repairs were inadequate. Rather, under Claimant's view, any vehicle that is repaired after an accident is inherently diminished in value as a result of being involved in an accident. We, however, agree with the trial court's finding that "there is no showing that the value of the vehicle following repair or replacement is necessarily inherently diminished."

It is not necessary to attempt to define direct or accidental loss in that, in the context of the policy, the insurer limits how it may settle such a loss with its policyholders. In other words, if policyholder's car is damaged, i.e. he sustains a loss to his automobile, insurer has the option to pay the policyholder the cash value of his car or pay to repair the vehicle. The term repair, particularly given that it is the contrary option of cash value, does not inherently include the concept of

value. Therefore, Insurer may choose to repair the vehicle and if Claimant agrees it is adequately repaired, Insurer's obligation under the policy is fulfilled.

 Claimant next argues that the exclusionary language in the policy is relevant to finding coverage for diminished value. Specifically, Claimant notes the absence of an express exclusion for diminished value. Exclusions do not provide coverage, however, they only limit the obligation undertaken by the policy. *Empire Fire & Marine Ins. Co. v. Dust*, 932 S.W.2d 416, 418 (Mo.App. E.D.1996). Therefore, an exclusion for diminished value is not necessary because, as we have concluded, Section IV of the policy does not create an obligation of the Insurer to pay for diminished value.

 Claimant further argues Insurer should have an exclusion for diminished value because other insurers have adopted such an exclusion in their policies in other states and because a trade association has proffered such exclusionary language. When there is no ambiguity in the language of a contract, extrinsic evidence should not be introduced. *Daniels Exp. and Transfer Co. v. GMI Corp.*, 897 S.W.2d 90, 92 (Mo.App. E.D.1995). We find no ambiguity in the relevant provisions of the policy and therefore will not consider Claimant's extrinsic evidence from other states and a trade association.

Lastly, Claimant contends Missouri case law holds diminished value is a covered loss, and that case law in a majority of other states does as well. We disagree with Claimant's contention on Missouri case law and decline to explore the case law in other states. Missouri case law has not addressed or recognized a claim for diminished value against an Insurer and despite claimant's contention, it is a question of first impression.

All three Missouri cases on which Claimant relies are distinguishable from the case

at bar. In *Barton v. Farmers Ins. Exchange*, 255 S.W.2d 451, 456–57 (Mo.App. S.D.1953), although the court found the measure of damages should have been the difference between the value of the vehicle pre-accident minus its value when repaired and presented to the claimant post-accident, the case dealt with a vehicle that was inadequately repaired. The case had nothing to do with inherent diminished value of a properly repaired vehicle and is therefore distinguishable.

In *Groves v. State Farm Mut. Auto. Ins. Co.*, 540 S.W.2d 39, 43 (Mo. banc 1976), the damage was such that full and adequate repairs would have been impossible, therefore making the repair payment option not feasible. The court relied upon tort precedent to support recovery based upon the pre-accident value of the vehicle. *Id. Groves* also did not discuss inherent diminished value of a properly repaired vehicle and is therefore distinguishable.

In *Shapiro v. Kravitz*, 754 S.W.2d 44 (Mo.App. E.D.1988), one driver sued another for damage to his vehicle. The court stated, "[g]enerally the measure of damage to an automobile is the decrease in its fair market value after the accident. However, if it can be repaired to its prior state, the cost of repair is a measure of damages." *Id.* at 45. Although this case is distinguishable because it addresses a tort action rather than recovery under insurance policy provisions, it clearly supports a determination that repair cost is a method of recovery where repair is adequate. *Shapiro* does not support Claimant's contention that diminished value of a properly repaired vehicle must be part of the vehicle owner's recovery under a cost of repair policy provision.

Implicit in these cases is the idea that there is a difference in the treatment of a properly repaired vehicle and an inadequately repaired vehicle. Claimant would have us collapse the two to find an inherent diminished value in any vehicle even if it is properly repaired. We find no support to do so in case law or the policy.

Claimant invites us to explore other states' case law to glean a "majority view." Because we find the policy unambiguous, we decline to do so.[4]

In summary, we conclude Claimant did not demonstrate any ambiguity in the relevant provisions of the policy. Further, under the provisions of Section IV of the policy, Insurer may choose to repair the damaged vehicle and where there is no allegation of inadequate repairs, the policy limits Insurer's liability to the cost of said repairs. Therefore, in the case at bar, we find inherent diminished value is not a covered loss in the policy.

Judgment affirmed.

MARY R. RUSSELL, P.J. and PAUL J. SIMON, J.: Concur.

---

4. Insurer's Motion for Leave to File Appendix of Unreported Decisions is herein denied.