**Susan LUPO, Appellant,**

v.

**SHELTER MUTUAL INSURANCE COMPANY, Respondent.**

No. ED 79238.

Missouri Court of Appeals, Eastern District, Division One.

Jan. 29, 2002.

Application for Transfer to Supreme Court Denied March 13, 2002.

Charles B. Blackmar, Senior Judge, concurred in the judgment and filed opinion.

Michael A. Garvin, St. Louis, MO, for appellant.

Seth G. Gausnell, St. Louis, MO, for respondent.

ROBERT G. DOWD, JR., Judge.

Susan Lupo (Lupo) appeals from the trial court's grant of summary judgment in favor of Shelter Mutual Insurance Company (Shelter). Shelter's motion for summary judgment alleged that diminished value was not a loss covered under the terms of its Missouri automobile insurance policy. Lupo raises four points. She claims the trial court erred in granting summary judgment in favor of Shelter because (1) an analysis of the policy under

contract construction rules does not establish that Shelter is entitled to judgment as a matter of law; (2) the trial court did not follow Missouri precedent; (3) the trial court failed to consider the majority view of other jurisdictions; and (4) Shelter's policy is ambiguous. We affirm because we find the policy to be unambiguous; and according to policy language, diminished value is not a covered loss as Shelter's liability is capped at either the actual cash value of the automobile *or* the cost to repair or replace the damaged automobile itself or with parts or property of like kind and quality.

On August 6, 1999, Lupo was in an automobile accident, which damaged her 1998 Pontiac Bonneville. A Shelter adjuster inspected the Bonneville to determine the extent of damage. Repairs were determined to cost approximately $4,642. The Bonneville was fully repaired and Shelter compensated Lupo for the damages.

On January 6, 2000, Lupo filed a class action suit against Shelter.[1] She alleged that Shelter breached its contract with her and a class of similarly situated policyholders by not compensating them for the diminished value of their damaged and fully repaired vehicles. Lupo claims in her petition that she is entitled to diminished value damages in the amount equal to the difference in the "pre-loss value . . . . and the value after full and proper repair. . . ."

Both Lupo and Shelter filed and argued motions for summary judgment. Lupo argued Shelter was required, under the terms of its automobile insurance policy, which allows Shelter the option to repair or replace the damaged automobile, to compensate her for any diminution in market value that might remain after Shelter has paid for repairs in order to restore the automobile to pre-accident physical condition. Shelter argued in its motion for summary judgment that diminished value was not a loss covered under the policy's provisions. The trial court granted summary judgment to Shelter and denied summary judgment to Lupo. This appeal follows.

Missouri courts regard summary judgment as an "extreme and drastic remedy" that must be applied with the exercise of "great care." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 377 (Mo. banc 1993) (quoting *Cooper v. Finke*, 376 S.W.2d 225, 229 (Mo. 1964)); *Hammonds v. Jewish Hospital of St. Louis*, 899 S.W.2d 527, 529 (Mo.App. E.D.1995). Respondents bore the burden of demonstrating that there is no genuine dispute regarding any fact material to the outcome of the case. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 378. When considering an appeal from the grant of summary judgment, the appellate court will review the record in the light most favorable to the party against whom the judgment was entered. *ITT*, 854 S.W.2d at 376. We need not defer to the trial court's judgment as it is founded on the record submitted and the law; therefore, appellate review is essentially *de novo*. *Id.* Summary judgement is appropriate when there is no dispute of material fact, and the moving party had demonstrated that it is entitled to judgment as a matter of law. *Id.*

Summary judgment is particularly appropriate when construction of a contract is at issue and the contract is unambiguous on its face. *Daniels Express and Transfer Co. v. GMI Corp.*, 897 S.W.2d 90,

---

**1.** No class was ever certified; therefore, all underlying proceedings deal exclusively with Lupo's individual claim. See *Parker v. Pulit-* *zer Pub. Co.,* 882 S.W.2d 245 (Mo.App. E.D. 1994).

91–92 (Mo.App.1995). We will accord the non-moving party the benefit of all reasonable inferences from the record. *ITT*, 854 S.W.2d at 376.

■ The first issue we must address to resolve Lupo's other arguments is whether Shelter's policy is ambiguous. We find it is not. Part V, **"Limits of Liability"** provision states the following:

> Under COVERAGES F and G [collision and comprehensive coverage], the limit of our liability for loss will not exceed the actual cash value of the stolen or damaged property, nor what it would then cost to repair or replace it or such part with other of like kind and quality, less depreciation.

Insurance policies are contracts; therefore, the rules of contract construction apply. *Auto. Club Inter–Ins. Exch. v. Farmers Ins. Co., Inc.*, 778 S.W.2d 772, 774 (Mo.App. E.D.1989). Lupo claims Shelter's policy is ambiguous and open to different constructions. However, she does not refer us to any specific instances of ambiguous language. Rather, she simply claims that the meaning of the "limit of liability" provision which includes "repair or replace" language may be uncertain and open to different meanings. Lupo not only argues that the provision is open to different meanings, she alleges, without citing to Missouri precedent, that this provision does not operate to exclude coverage for a vehicle's diminished value.

■ The issue of whether a contract is ambiguous is a question of law. *Follman Properties Co. v. John Henry Foster Co.*, 872 S.W.2d 499, 501 (Mo.App. E.D.1994). To determine whether a contract is ambiguous, this Court considers the whole document, and absent any definition within the contract, gives contract terms their natural and ordinary meaning. *Lake Cable, Inc. v.*

*Trittler*, 914 S.W.2d 431, 435–436 (Mo.App. E.D.1996).

■ A contract is ambiguous only if reasonable people may fairly and honestly differ in their construction of the terms because the terms are susceptible of more than one meaning. *Follman*, 872 S.W.2d at 501. A contract is not ambiguous merely because the parties disagree over its meaning. *Daniels Express v. GMI Corp.*, 897 S.W.2d 90, 92 (Mo.App. E.D.1995). We find that the "limit of liability" provision clearly states Shelter's liability will not exceed either the actual cash value of the damaged automobile *or* the payment for full repair or replacement with like kind and quality. The provision does not require a restoration of pre-accident value, but rather a restoration of the physical condition of the automobile. In *Shapiro v. Kravitz*, 754 S.W.2d 44 (Mo.App. E.D. 1988), this Court stated, "[g]enerally the measure of damage to an automobile is the decrease in its fair market value after the accident. However, if it can be repaired to its prior state, the cost of repair is a measure of damages." *Id.* at 45.

Further, in addition to the "limits of liability" provision, the "loss settlement" provision also explains that Shelter "may pay the loss in money *or* repair or replace damaged or stolen property." Together, these provisions make clear to the layperson insured that she is either entitled under the policy to the actual cash value of the damaged property *or* the cost to repair or replace said property. Therefore, we find no ambiguity in these policy provisions.

■ Where no ambiguity exists in the contract, the court enforces the policy as written. *Peters v. Employers Mut. Casualty. Co.*, 853 S.W.2d 300, 302 (Mo. banc. 1993). Evidence of how the contract was understood or acted upon by the parties is only used when the contract or a contract

term is unclear. *Nickles v. Auntie Margaret Daycare Corp.*, 829 S.W.2d 614, 616 (Mo.App. E.D.1992). This Court will not create an ambiguity by using extrinsic or parole evidence. *Lake Cable*, 914 S.W.2d at 436.

In Lupo's first point on appeal, she contends that analysis of the policy under rules of construction establish that Shelter is not entitled to judgment as a matter of law. Lupo directs us to different sections of the policy to support her contention that diminished value is covered. She first claims that the terms "loss," "direct," and "accidental" are not defined in the policy and therefore should be construed to encompass any loss to the insured vehicle, including diminution in value. The "Coverage" provisions state in relevant part: "We will pay for direct and accidental loss to the described auto. . . . ." The "loss settlement" provision states that, "[Shelter] may pay the loss in money or repair or replace damaged or stolen property." Lupo further alleges, that because the terms "direct" and "accidental" used in the "coverage" provision are not defined in the policy it is logical that diminished value is "no less a direct and accidental loss to an insured car than any other loss resulting from accidental loss to the vehicle."

We agree that the insuring language of the policy covering "direct and accidental loss" may be broad enough to encompass diminished value. However, the "limits of liability" clause is also broad enough to cap Shelter's obligation to either repair or replace the damaged automobile.

A limitation of liability clause in an automobile policy is enforceable according to its own terms as long as the same is not invalidated by statute. *Williams v. Farm Bureau Mut. Ins. Co. of Mo.*, 299 S.W.2d 587, 588 (Mo.App.1957). Plaintiff has the burden to prove that the loss is covered by the policy. *Am. States*

*Ins. Co. v. Mathis*, 974 S.W.2d 647, 649 (Mo.App. E.D.1998). The policy's language clearly provides Shelter with the three options to compensate the insured. Shelter may pay the lesser of either the "actual cash value" *or* the cost to "repair" *or* "replace" the automobile when a loss occurs. This language does not state, as Lupo argues, that Shelter must pay to repair the automobile *and* pay any loss in value. There is no dispute that Shelter fulfilled its obligation to pay for the full and proper repair of Lupo's automobile. Lupo is not arguing that the repairs were inadequate; rather she contends that diminished value is inherent to all automobiles damaged in a collision, and therefore, to be fully compensated for the loss, Shelter should not only repair the automobile but also compensate her for the loss in value. To adopt the construction of the policy argued by Lupo would require that the methods of compensating for the loss expressed in the policy be cumulative. They clearly are not.

In her second point, Lupo contends Missouri case law holds diminished value is a covered loss. We disagree. No Missouri precedent finds that a first-party claimant is entitled to recover diminished value under the terms of coverage in an insurance policy when the insurer has paid to have the automobile fully and sufficiently repaired. All Missouri cases on which Lupo relies are distinguishable from the instant case. In *Barton v. Farmers Ins. Exch.*, 255 S.W.2d 451, (Mo.App. S.D.1953), the court found the measure of damages should have been the difference between the value of the automobile before the accident minus the value when repaired. *Id* at 456–57. However, the court's holding was premised on the fact that the automobile was inadequately repaired. Here, Lupo's automobile was fully and adequately repaired; therefore, *Barton* is

distinguishable. Further, the remaining Missouri cases on which Lupo relies are also distinguishable. In *Groves v. State Farm Mut. Auto. Ins. Co.*, 540 S.W.2d 39, 43 (Mo. banc 1976), the damage was so extensive that full and adequate repairs would not have been feasible, and *Shapiro v. Kravitz*, 754 S.W.2d 44 (Mo.App. E.D. 1988), addresses recovery for a tort action rather then recovery from an insurance company under breach of contract. Hence, under Missouri case law diminished value is not a covered loss in a breach of contract action where full and adequate repairs have been made. Our rationale on this point follows two recent opinions issued by this court in *Camden v. State Farm Mutual Automobile Insurance Co.*, 66 S.W.3d 78 (Mo.App. E.D. 2001) and *Spellman v. Sentry Insurance*, 66 S.W.3d 74 (Mo.App. E.D., 2001). Although the language in Shelter's policy differs somewhat from the policy language in these two cases, we find the analysis and rationale used germane to this case and precedent for the principle that diminished value is not implied in policies of this type.

Although the liability limitation language unambiguously gives Shelter the option to repair or replace the automobile, it also states that it will repair or replace with "like kind and quality." Although Lupo does not specifically raise this phrase in support of her argument, we feel it is necessary to analyze this language to determine whether the phrase encompasses Lupo's claim for diminished value. We acknowledge there is a nationwide split in authority as to whether this language includes recovery for diminished value. Many jurisdictions have allowed coverage for diminished value in policies that call for repair or replacement with "like kind and quality." These courts conclude that if repairs fail to restore the damaged automobile to its former market value, the insured is entitled to recover the difference between the fair market value immediately before the accident and immediately after all repairs have been made.[2] Conversely, there are equally as many other jurisdictions that have interpreted the "like kind and quality" language to not allow for diminished value in situations where the automobile has been fully repaired.

In approaching the resolution of this appeal, we are mindful that the function of this court is to interpret and enforce an insurance policy as written; not to rewrite the contract. *Eagle Star Ins. Co. v. Family Fun, Inc.*, 767 S.W.2d 623, 624 (Mo.App. W.D.1989). When words

---

2. *MFA Ins. Co. v. Citizens Nat'l Bank of Hope*, 260 Ark. 849, 545 S.W.2d 70 (1977) (holding that if repairs to a damaged vehicle with parts of like kind and quality would not restore the vehicle to its former market value, the proper measure of damages was the difference in market value before and after the loss where the policy limited liability to the "cost to repair or replace the property . . . . with other of like kind and quality"); *Delledonne v. State Farm Mut. Auto. Ins. Co.*, 621 A.2d 350, 354 (Del.Super.Ct.1992) (finding that a policy provision to "repair or replace . . . . with like kind and quality" is ambiguous and required that the insurer pay for diminution in value); *Campbell v. Calvert Fire Ins. Co.*, 234 S.C. 583, 109 S.E.2d 572, 577 (1959) (holding there has not been a complete restoration of the damaged automobile unless there has been no diminution of value after repair where the insurer's liability was limited to either the actual cash value of the automobile or what it would cost to "repair or replace the automobile . . . . with other of like kind and quality"); *Senter v. Tenn. Farmers Mut. Ins. Co.*, 702 S.W.2d 175, 178 (Tenn.App.1985) (finding that if repairs made restore function and appearance but not fair market value, the insured is entitled to recover the difference between the fair market value of the property immediately before the accident and immediately after all repairs have been made).

and phrases in an insurance policy are not defined therein, they are to be given their ordinary meaning. *Krombach v. Mayflower Ins. Co., Ltd.,* 785 S.W.2d 728, 731 (Mo.App.E.D.1990).

■ It is well-settled law in Missouri that when interpreting the language used in an insurance policy, the court gives the term its ordinary meaning, unless it appears a technical meaning was intended. *Peters,* 853 S.W.2d at 303. To determine the ordinary meaning of a term, courts consult standard English language dictionaries. *Id.*

■ The term "repair" must be given its generally prevailing meaning and be construed according to its common usage. *Townsend v. State Farm Mutual Auto. Ins. Co.,* 2001 La.App. LEXIS 1895, 793 So.2d 473,. BLACK'S LAW DICTIONARY 1298 (6th ed.1990) defines "repair" as, "to mend, remedy, restore, renovate. To restore to a sound or good state after decay, injury, dilapidation, or partial destruction." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1967) defines the following words; 1923,1243,-1858 (1) "repair" as the act or process of restoring to a state of soundness, efficiency or health; to restore to a sound or healthy state; to make good; (2) "kind" as the innate character; fundamental nature or quality; and (3) "quality" as the "peculiar and essential character." Therefore, applying the common prevailing meaning, a "repair .... with other of like kind and quality" would require Shelter to restore the damaged automobile to good, sound condition with parts and workmanship of the same essential quality or character that existed on the automobile prior to the accident. There is no concept of "value" in the ordinary meaning of the word repair. *Carlton v. Trinity Universal Ins. Co.,* 32 S.W.3d 454, 464–465 (Tex.App.2000). This phrase does not indicate that the automobile will be returned to its pre-accident market value.

To interpret this phrase as encompassing the diminished value of an automobile would go beyond the phrase's common prevailing meaning of which an ordinary insured would reasonably understand the phrase to mean. To hold Shelter liable for the automobile's diminished value would make it an insurer of the automobile's cash value in all instances and would render meaningless its expressed right under the "limits of liability" provision to elect to repair or replace rather than to pay the actual cash value of the automobile at the time of the loss. *See, Ray v. Farmers Ins. Exch.,* 200 Cal.App.3d 1411, 246 Cal.Rptr. 593 (1988).

Nowhere in Shelter's policy is language that requires it to pay Lupo the difference in market value after the automobile has been fully repaired. A review of cases from other jurisdictions, which have decided this issue, convinces us that the correct view is that Shelter's liability is limited by the terms of the policy to either pay the actual cash value of the automobile *or* the cost of repairing or replacing the vehicle less any deductible payable by the insured. *See, Gen. Accident Fire & Life Assur. Corp. v. Judd,* 400 S.W.2d 685, 687 (Ky. 1966) (finding that an insurance policy that limited liability to the amount it would cost to "repair or replace the property .... with other of like kind and quality" did not require a restoration of value but only a restoration of physical condition, while recognizing that a car damaged in an accident may never be fully restored to its original market value); *Johnson v. State Farm Mut. Auto. Ins. Co.,* 754 P.2d 330, 331 (Ariz.App.1988) (interpreting "repair or replace .... with like kind and quality," the court stated that "nowhere in the policy does there appear any language which requires [insurer] either to restore the ve-

hicle to its pre-accident condition or to pay the insured the difference in value after the accident as opposed to before"); *Carlton,* 32 S.W.3d at 464–65 (holding that there is no concept of value in the ordinary meaning of the word "repair" and finding that the policy's limit of liability caps the insurer's liability at the cost of returning the damaged vehicle to substantially the same physical and mechanical condition as before the accident); *Rezevskis v. Aries Ins. Co.,* 784 So.2d 472, 473 (Fla.App.2001) (finding that the limitation on liability "repair or replace" provision capped the insurer's liability at the amount necessary to return the car to substantially the same condition as before the accident and did not include liability for loss due to stigma on resale); *Bickel v. Nationwide Mut. Ins. Co.,* 206 Va. 419, 143 S.E.2d 903, 906 (1965) (stating that it would be "arbitrary reading out of the policy the right of defendant to make repairs or replace the damaged part with materials of like kind and quality" to calculate damages as the difference in market value immediately before and after the accident); *Hardware Mut. Casualty Co. v. Baldus,* 44 N.E.2d 947, 948 (Ill.App. 1942) (holding that where personal property has been damaged by the negligence of another and can be repaired, the proper measure of damages is the cost of the repairs).

We hold that where an insurer has fully and adequately repaired or replaced the damaged property with other of like kind and quality, any reduction in the market value of the automobile due to factors that are not subject to repair and replacement cannot be deemed a component part of the cost of repair or replacement. Under the policy's "repair or replacement" provision, the insurer's liability is capped at the cost of returning the damaged automobile to substantially the same physical and mechanical condition as existed immediately prior to the accident.

In summary, we conclude the trial court did not err because Lupo failed to demonstrate any ambiguity in the relevant provisions of the insurance policy. Further, under the provisions of Part V of the policy, Shelter may choose to repair the damaged automobile; and where there is no allegation of inadequate repairs, the policy limits Shelter's liability to the cost of said repairs. Thus, we find inherent diminished value is not a covered loss in the policy.

The judgment of the trial court is affirmed.

CRANDALL, P.J., concurs.

CHARLES B. BLACKMAR, Sr.J., concurs in the judgment in opinion filed.

CHARLES B. BLACKMAR, Senior Judge, concurring in the judgment.

Although the principal opinion does not discuss in detail the cases of *Camden v. State Farm Mutual Automobile Insurance Co.,* 66 S.W.3d 78 (Mo.App. E.D., 2001) and *Spellman v. Sentry Insurance,* 66 S.W.3d 74 (Mo.App. E.D., 2001) decided by Division II of this district, it is entirely in line with these cases. They establish precedent in this district that a collision insurer may avoid providing full compensation (less any deductible, of course) for collision damage by exercising a policy option to repair the damage. Inasmuch as I am not a regular judge of this court, I believe that I should defer to the principle of *stare decisis* by following these holdings. I therefore concur in the judgment of affirmance.

As the principal opinion recognizes, however, there is a clear split of authority on this issue. The cases cited in footnote two seem to enunciate the proposition that "re-

pair" is not complete unless value is restored. The *Camden* opinion declined to consider opinions from other states because of its conclusion that the language of the policy was clear. Our courts, of course, are not bound in any sense by decisions from other states, but I believe that there is merit in uniformity among our several jurisdictions, especially in commercial matters. For this reason I hope that our Supreme Court will undertake consideration of the problem disclosed by this case and the other cases from this district discussed above, with consideration of other authorities.

With these observations, I concur in the judgment of affirmance.